Argued and submitted October 11, 2013, vacated and remanded
September 10, 2015, petition for review denied January 14, 2016 (358 Or 529)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## CHRIS D. GORDON,
*Defendant-Respondent.*

Beaverton Municipal Court
UC7718711, UI7718721; A152242

359 P3d 499

Jeff J. Payne, Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Gary M. Carlson argued the cause and filed the brief for respondent.

Before Nakamoto, Presiding Judge, and Haselton, Chief Judge, and De Muniz, Senior Judge.*

HASELTON, C. J.

---

* Haselton, C. J., *vice* Armstrong, P. J.

**HASELTON, C. J.**

The state appeals the trial court's order suppressing evidence that resulted from a traffic stop. For the reasons explained below, we conclude that the trial court erroneously concluded that the officer did not have probable cause for the stop based on its factual finding that defendant did not commit a traffic violation, and we vacate and remand for the trial court to apply the proper legal analysis.

In reviewing a trial court's decision on a motion to suppress, we are bound by its express and implicit factual findings that are supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the material facts in accordance with that standard.

On May 10, 2012, at 1:00 a.m., Beaverton Police Officer Crino was parked at the intersection of 107th Avenue and the Beaverton-Hillsdale Highway when he saw defendant's vehicle turn left onto 107th from the highway. Defendant's vehicle then proceeded down 107th Avenue, turned around, proceeded back down 107th in the opposite direction, and made a right-hand turn back onto the highway. Crino subsequently stopped the vehicle and, upon observing signs that defendant was intoxicated, initiated a DUII investigation. Defendant had been driving, and his wife was also in the vehicle.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and refusal to take a test for intoxicants, ORS 813.095, but was not charged with making an illegal U-turn under ORS 811.365.[1] Before

---

[1] ORS 811.365 provides, in part:

"(1) A person commits the offense of making an illegal U-turn if the person is operating a vehicle and the person turns the vehicle so as to proceed in the opposite direction in any of the following places:

"(a) Within an intersection where traffic is controlled by an electrical signal. This paragraph does not apply where posted otherwise.

"(b) Upon a highway within the limits of an incorporated city between intersections."

Under ORS 801.305(1), the term "highway" is defined as "every public way, road, street, thoroughfare and place, including bridges, viaducts and other structures within the boundaries of this state, open, used or intended for use of the general public for vehicles or vehicular traffic as a matter of right."

trial, defendant moved to suppress all evidence resulting from the stop.

At the suppression hearing, Crino testified that he had been with the Beaverton Police Department for nine years, had received training in traffic enforcement, and that he "frequently" patrolled the intersection of 107th and the Beaverton-Hillsdale Highway for U-turn violations, which he knew to be common in that location. Crino recounted his observations of defendant as follows:

> "I watched [defendant] proceed eastbound on Beaverton-Hillsdale Highway, and stop his vehicle here at a left turn light. [Defendant] turn—proceeded to make this left-hand turn and proceed north on 107th, approximately I would say no more than three city blocks north of Beaverton-Hillsdale Highway. From this position here, straight view, nothing blocking, I watched [defendant] make a U-turn from northbound to proceed back southbound on 107th back towards Beaverton-Hillsdale Highway."

Defendant and his wife directly contradicted Crino's testimony. Specifically, both testified that defendant had not made a U-turn but, instead, that he had turned around in a driveway. According to defendant's wife, after turning onto 107th, defendant "[w]ent to the nearest driveway, which was the Golden Crown Restaurant" and "pulled into the driveway, made a half circle round, stopped, checked for clearance. There was no traffic, and then he turned left onto 107th." Defendant's testimony echoed that account.

On cross-examination and on rebuttal, Crino denied that defendant had pulled into the restaurant driveway, testifying that the turn had occurred "much farther down 107th *** not leaving the roadway at all." According to Crino, he had no doubt, based on his training and experience—and because defendant's was "the only vehicle on the road" at the time—that he had observed defendant's vehicle make an illegal U-turn after proceeding a distance of approximately "three city blocks" down 107th.

Defense counsel argued that all evidence resulting from the stop should be suppressed, because Crino lacked probable cause to stop defendant's vehicle. Notwithstanding Crino's testimony that he observed defendant's vehicle make

an illegal U-turn on 107th, the defense posited—based on defendant's and his wife's testimony—that "no illegal U-turn ever took place." Furthermore, the defense argued that, under Oregon law, if the trial court found that no traffic violation actually took place, the stop was unlawful because, as a categorical matter, *"in the absence of a police officer having a traffic violation committed in his presence,* there is no probable cause to stop a driver and the stop is not valid." (Emphasis added.)

In response, the state argued that Crino's testimony about what he observed was more credible than that of defendant or his wife, who were both visibly intoxicated during the stop. Alternatively, the state argued that, even if Crino's belief that defendant had made an illegal U-turn turned out to be mistaken, Crino nonetheless had probable cause for the stop because he reasonably believed, at the time, that a violation had occurred. Contrary to defense counsel's legal contention, the state asserted that "[a] *traffic violation does not have to actually occur* in order for the officer to have probable cause to stop the vehicle." (Emphasis added.)

The trial court granted the motion to suppress, setting out its factual findings and legal conclusion in a July 11, 2012, letter opinion, identifying the sole issue before it as "whether the officer had a basis to stop defendant's vehicle for an illegal U-turn." After summarizing the undisputed facts, *see* 273 Or App at 496, the trial court noted that the parties disputed "where the defendant's vehicle turned around; how he turned around, whether in the highway only or using a business entrance," with Crino testifying that defendant made a U-turn "exclusively in the roadway," and the defense asserting that defendant had "turned into the entrance of a restaurant, made a semi-circle in the driveway, and entered back on the roadway, and this driveway was less than one block from the intersection where the officer was."

The trial court made the following findings as to the stop:

"*The court finds the officer's testimony to be truthful.* Further the court finds that the officer was mistaken about

the [exact] color of the vehicle. This point is of little significance because the vehicle was the only vehicle on 107th Ave. at the time. As to the location of the turn it seems less likely to the court that the turn was three blocks up 107th Ave. After viewing the aerial maps or photos and considering the distances, the driving origin of the defendant and his destination location, it seems more likely to the court that the turn occurred closer to the Beaverton-Hillsdale Highway.

*"The court also finds the witnesses [defendant and his wife] were truthful.* The court believes they minimized their level of affect by the alcohol they consumed. They were truthful as to where they came from and where they were going as they drove that evening. The level of intoxication does not seem to the court to cause the witnesses to not be able to remember the driving and turning around that evening."

(Emphases added.)

Having found the testimony of Crino, on one hand, and defendant and his wife, on the other, all to be "truthful," the court then (1) found that the events had *actually* occurred as defendant and his wife described; (2) based on that finding, determined that defendant had not, *in fact*, committed a traffic violation; and (3) based on that "objective" determination, concluded that the predicate stop was unlawful, requiring suppression:

"The court finds that it is more likely than not that the change in direction of the vehicle driv[en] by [defendant] occurred at the entrance to the restaurant. His vehicle left the roadway and re-entered the roadway using the driveway entrance. It is more likely to the court that the turn would be at this location than traveling nearly 3 blocks to turn around passing locations to turn around when there is no other traffic on the highway. The court finds that objectively, the turn occurred as described at the restaurant entrance. As a result it was not an illegal U-turn as ORS 811.365 defines.

"The court grants [defendant's] motion."

The state appeals. As explained below, we conclude that the trial court applied a legally erroneous construct in considering, and granting, the motion to suppress.

Accordingly, we vacate the order granting suppression and remand for reconsideration.

Under Article I, section 9, of the Oregon Constitution, a traffic stop is lawful only if the officer who stops the vehicle has probable cause to believe that a traffic violation has occurred. *State v. Matthews*, 320 Or 398, 403, 884 P2d 1224 (1994).[2] In the context of a traffic stop, probable cause is established "if, at the time of the stop, the officer subjectively believes that the infraction occurred and if that belief is objectively reasonable under the circumstances." *State v. Isley*, 182 Or App 186, 190, 48 P3d 179 (2002); *see also State v. Tiffin*, 202 Or App 199, 121 P3d 9 (2005).

In *Tiffin*, we summarized the controlling construct of objective probable cause:

"[A]n officer's subjective belief that a traffic infraction occurred is objectively reasonable if, and only if, the facts *as the officer perceived them* actually satisfy the elements of a traffic infraction."

202 Or App at 204 (emphasis added); *see also State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008) ("[T]o satisfy the objective component, the facts *that the officer perceives to exist* must establish the elements of *an* offense." (First emphasis added; second emphasis in original.)). Thus, an officer's perceptions, even if mistaken, can establish probable cause. *See, e.g., Tiffin*, 202 Or App at 203 ("[A]n officer's belief may be objectively reasonable even if it turns out to be incorrect."); *State v. Gilbertz*, 173 Or App 90, 95-96, 20 P3d 252, *rev den*, 332 Or 559 (2001) ("We have never held that an otherwise lawful stop of a person was unlawful merely because an officer was wrong in his or her subjective belief that a crime had been committed.").

_____

[2] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

ORS 810.410(3)(b), which authorizes police to make stops for traffic violations, also requires that traffic stops be based on probable cause. *Matthews*, 320 Or at 402.

Thus, in ruling on defendant's motion to suppress, the trial court was required to determine (1) whether, at the time he initiated the stop of defendant's vehicle, Crino subjectively believed that defendant had committed a traffic violation, and (2) if so, whether "the facts that [Crino] perceive[d] to exist" established the elements of a traffic offense. *Boatright*, 222 Or App at 410.

As expressed in its ruling granting the motion to suppress, the trial court's reasoning did not conform to that prescribed analysis. Specifically, as described above, after deeming Crino's testimony to be "truthful" (which would at least arguably encompass Crino's recounting of his perceptions before the stop), the court then proceeded to allow suppression based, ostensibly, on its determination that defendant had not, in fact, committed a traffic offense. *See* 273 Or App at 498-99. That is, the trial court appears to have concluded that, *because* Crino was mistaken, probable cause for the stop did not exist.

That approach erroneously conflates an evaluation as to whether defendant actually committed a traffic violation with whether there was probable cause, based on the officer's contemporaneous knowledge and perceptions, to believe that defendant had done so. Because it is unclear whether the trial court's characterization of Crino's testimony encompassed a finding that that testimony represented a complete and accurate account of his perceptions, we vacate and remand for the trial court to reconsider the suppression motion under the prescribed construct.[3]

Vacated and remanded.

---

[3] Because the trial court's ruling was predicated on an erroneous understanding and application of the law, any presumptive inference under *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), as to the scope of the trial court's finding that Crino's testimony was "truthful" is inapposite in these circumstances. *State v. Ellis*, 252 Or App 382, 390, 287 P3d 1215 (2012), *rev den*, 353 Or 428 (2013) ("[Such presumptions are] necessarily dependent on the trial court's application of the correct legal analysis. If the court is operating under a misunderstanding as to the applicable legal principles * * * we will not infer that the court decided facts consistently with that erroneous legal construct.").