Argued and submitted May 31, 2019, affirmed April 15, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON COOPER STRASSER,
aka Jason C. Strasser,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CN05957, 16CN04382;
A166944 (Control), A166951

464 P3d 497

In this consolidated appeal, defendant appeals from a judgment of contempt for violating a restraining order and a separate judgment continuing defendant's probation that converted defendant's bench probation to formal probation. Defendant assigns error to the trial court's exclusion of certain witness testimony at the contempt hearing, arguing that the testimony was admissible under OEC 613(2) as extrinsic evidence of the victim's prior inconsistent statement for the purpose of impeaching the victim's credibility. *Held*: Assuming without deciding that there was error, the Court of Appeals concluded that any error in excluding the testimony was harmless. The testimony defendant sought to elicit was cumulative of the witness's previous testimony because it added nothing qualitatively different to the record. Moreover, the trial court, acting as the fact-finder, explained that it understood defendant's argument regarding the victim's prior inconsistent statements and that it found the victim's testimony credible regardless. Therefore, any error in excluding the testimony had little likelihood of affecting the verdict.

Affirmed.

Patricia L. McGuire, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Hannah K. Hoffman, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

In this consolidated appeal, defendant appeals from a judgment of contempt for violating a restraining order and a separate judgment continuing defendant's probation that converted defendant's bench probation to formal probation.[1] Defendant assigns error to the trial court's exclusion of certain witness testimony at the contempt hearing, arguing that the testimony was admissible for impeachment purposes as prior inconsistent statements under OEC 613.[2] As explained below, we affirm the trial court's ruling, because the testimony at issue was cumulative of other evidence in the record and any presumptive error was harmless.

"[W]hen we are assessing the harmlessness of evidentiary error, we look at all pertinent evidence." *State v. Blaylock*, 267 Or App 455, 456 n 1, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (citing *State v. Cunningham*, 179 Or App 359, 361 n 2, 40 P3d 1065 (2002), *rev'd on other grounds*, 337 Or 528, 99 P3d 271 (2004)). The victim in this case had obtained a restraining order against defendant, who was her former boyfriend. While that restraining order was in force, the victim called 9-1-1 to report that defendant came to her house in violation of the restraining order. Defendant was arrested and charged with punitive contempt, ORS 33.065, for violating a restraining order under ORS 107.718.[3] The court held a contempt hearing.

The state called only the victim as a witness. She testified that, early in the morning on the day in question, defendant came to her house, tapped on her bedroom window, and then stood at her front door asking to talk. She testified that "I opened the door, I saw him, I slammed the door and I went and called 911." She testified that she "did not see him leave" and that she assumed he left on a bicycle.

---

[1] That separate judgment continuing probation was entered after defendant was found in contempt; defendant then stipulated that he had not obeyed all laws in violation of his probation.

[2] OEC 101(2) provides that the Oregon Evidence Code applies to, among other things, "contempt proceedings except those in which the court may act summarily."

[3] Contempt of court is defined as, among other things, the willful "[d]isobedience of *** the court's *** orders or judgments." ORS 33.015(2)(b).

The victim then testified that an officer responded to her house and that she told the officer that defendant might be found at Dotty's, a video poker establishment.

After the state had presented its case, defense counsel began with an opening statement, presenting defendant's theory of reasonable doubt:

> "You will also hear from Officer Chong specifically that the victim said that [defendant] left on a bike and that's why Officer Chong went to investigate the—whether or not [defendant's] bike was in working condition, and you'll [hear] from [defendant's roommate] that the bike wasn't working in good condition, that the night before the incident, the bike—the chain had come off, and that [defendant] walked home, and that—that same bike was shown to Officer Chong. Officer Chong took photos of that bike as well, and he'll be able to testify to that, and it wasn't in working condition, and I believe after all of that you will find that there is reasonable doubt and the State hasn't met its burden."

Defense counsel then called Officer Chong to testify. Chong testified that he had been dispatched to the victim's house for a violation of a restraining order. Defense counsel asked Chong about whom he spoke to on the date of the incident:

> "[DEFENSE COUNSEL]:  Okay, so first you spoke with [the victim]?
>
> "[CHONG]:   The caller, yes."

Chong then testified that, after speaking with the victim—who he identified as "the caller"—he went to Dotty's, arrested defendant, and then went to the residence where defendant was staying at the time to interview defendant's roommate about "[t]he bike in question." The prosecutor objected on the basis of relevance, asserting that "the testimony we have from [the victim] is that she assumed he had a bike but didn't see one." Defense counsel explained to the court that Chong was "going to testify to the facts that the victim told him that she saw [defendant] leave on a bike, and what color the bike was, and his investigation goes to that bike. It's all relevant." The prosecutor responded that "that would be hearsay, because we did not hear that on direct." Defense counsel responded that it was "for the purpose of

impeachment at this point." The court overruled the prose-
cutor's relevance and hearsay objections.

The following testimony then ensued:

"[DEFENSE COUNSEL]:   But you said that you went
to—there was a bike in question. Why did you think there
was a bike in question?

"[CHONG]:   Because I was told by the caller that he
had left on a bike.

"[DEFENSE COUNSEL]:   So [the victim] told you that
he had left on a bike?

"[PROSECUTOR]:   Objection to hearsay.

"[DEFENSE COUNSEL]:   It's for the purpose of an
impeachment, Your Honor, to be—

"[PROSECUTOR]:   You could have asked her on
cross-examination.

"THE COURT:   Objection sustained."

Defense counsel then elicited testimony from Chong that
he had gone to defendant's residence, interviewed his room-
mate, and was shown a bike that matched the description of
the bike that he was "under the impression" that defendant
had been riding when he left the victim's house. Chong tes-
tified that that bicycle had a broken chain.

At the conclusion of the hearing, the court found
defendant in contempt. In explaining its ruling, the court
stated, "I understand where you were going with the—with
the bike argument, and I—I do have to tell you that—that
was not as credible to me as the testimony of [the victim]
with her testimony that she had seen him at her front door."

Defendant now appeals, assigning error to the trial
court's ruling excluding Chong's answer to the question of
whether it was the *victim* who told him that defendant had
left on a bike. In defendant's view, the testimony was admis-
sible under OEC 613(2) as extrinsic evidence of the victim's
prior inconsistent statement to Chong for the purpose of
impeaching the victim's credibility. Defendant argues that
OEC 613(2) requires only that the witness be "afforded
an opportunity to explain or deny [the statement] and the

opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." OEC 613(2). Defendant relies on commentary to OEC 613, which observes that "[n]o particular time or sequence is specified" for when a witness must be given the opportunity to explain or deny a prior inconsistent statement before extrinsic evidence is admissible.[4] OEC 613 Commentary (1981). Defendant argues that, here, the record indicates that the victim remained in the courtroom for the duration of the hearing and could have been recalled as a witness by the state to explain or deny her statement. Accordingly, defendant argues, the trial court erred in excluding Chong's testimony.

The state first responds that the error is unpreserved and is unreviewable as plain error because the error was not "obvious." *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991) (to qualify as plain error, the error must be, among other things, "'apparent,' *i.e.*, the point must be obvious, not reasonably in dispute"). In the state's view, it is an open legal question whether a witness must be given an opportunity to explain or deny a prior inconsistent statement *before* extrinsic evidence of that statement is admissible under OEC 613(2), because no Oregon court has examined the issue and the commentary to the rule is not law. The state also asserts that any error was harmless under the circumstances because the testimony that defendant sought to be admitted was cumulative of other testimony in the record.

We conclude that any error, assuming there was error, in excluding Chong's testimony was harmless. "We must affirm a judgment, despite any error committed at trial, if we determine that there is little likelihood that the particular error affected the verdict." *State v. Lachat*, 298

---

[4] The commentary to OEC 613(2) states that

"[t]he traditional insistence that the witness' attention be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain the statement and the opposite party an opportunity to examine on the basis of it. *No particular time or sequence is specified.*"

Legislative Commentary to OEC 613 reprinted in Laird C. Kirkpatrick, *Oregon Evidence* § 613.02 (6th ed 2013) (emphasis added).

Or App 579, 589, 448 P3d 670 (2019), *rev den*, 366 Or 257 (2020) (internal quotation marks and citation omitted). In conducting that harmless error analysis, we consider "the nature of the error" and the "context" of that error. *State v. Davis*, 336 Or 19, 32-33, 77 P3d 1111 (2003). The erroneous exclusion of evidence is harmless if a factfinder "would have regarded the evidence as duplicative or unhelpful to its deliberations." *Blaylock*, 267 Or App at 472 (quoting *State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008) (internal quotation marks, citations, and ellipses omitted)).

Here, the trial court, sitting as factfinder, heard from the victim that she had called 9-1-1 upon seeing defendant at her door. The court also heard from Chong that he spoke with the victim, who Chong identified as "the caller," when Chong responded to the victim's house. Chong further testified that the "caller" told Chong that defendant had left her house on a bicycle. There was no other 9-1-1 call or caller alluded to during the hearing, and, thus, the only available inference was that the caller and the victim were the same person. Chong's testimony that he spoke to the "caller" when asked if he spoke with the victim further clarified that point. Thus, the testimony that defendant sought to elicit from Chong—that it was the "victim" who told him that defendant left on a bicycle—was merely cumulative of his previous testimony that the "caller," already identified as the "victim," told him the same thing. It "added nothing 'qualitatively different' to the record." *See Blaylock*, 267 Or App at 474 (quoting *Davis*, 336 Or at 34).

Moreover, the trial court explained that it understood where defendant was "going" with his argument regarding the victim's prior inconsistent statements regarding defendant leaving on a bicycle, and that the court found the victim's testimony that she saw defendant at her front door credible regardless of the testimony about how defendant left the scene. We are confident that any error in excluding the testimony, therefore, had "little likelihood of affecting the verdict."

In light of Chong's testimony immediately prior to the state's hearsay objection, we conclude that the challenged testimony was merely cumulative of evidence already

in the record, and any error in its exclusion was harmless. Accordingly, we affirm.

      Affirmed.