Submitted October 31, 2018, resubmitted en banc August 19; reversed and remanded November 12, 2020

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# ALICIA LEE ANN AGUILAR,
*Defendant-Appellant.*

## Washington County Circuit Court
## 16CR72930; A164497

478 P3d 558

Defendant was stopped for the traffic violation of failing to wear a safety belt, ORS 811.210, and subsequently gave consent to search her purse, resulting in the discovery of methamphetamine. She appeals from a judgment of conviction for felony possession of methamphetamine, ORS 475.894. She raises two assignments of error. First, she argues that her conviction is void under Article VII (Amended), section 5, of the Oregon Constitution because she was not indicted, there was no preliminary hearing, and she did not knowingly waive her right to an indictment or a preliminary hearing. She argues that the trial court lacked subject matter jurisdiction and committed plain error in entering a conviction. Second, defendant assigns error to the denial of her motion to suppress evidence derived from the consent search of her purse. She argues that the officer lacked probable cause to stop and investigate her for the traffic violation of failing to wear a safety belt, and that her subsequent consent was tainted by the illegal stop. *Held*: The Court of Appeals rejected defendant's constitutional challenge to the trial court's jurisdiction, but concluded that the trial court erred in denying defendant's motion to suppress and in concluding that the officer had probable cause to believe that defendant had committed the traffic violation of not wearing a safety belt in a vehicle operating on the highway.

Reversed and remanded.

En Banc

Kirsten E. Thompson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Egan, Chief Judge, and Armstrong, Ortega, DeVore, Lagesen, Tookey, DeHoog, Shorr, James, Aoyagi, Powers, Mooney, and Kamins, Judges.

SHORR, J.

Reversed and remanded.

Mooney, J., concurring.

Armstrong, J., dissenting.

**SHORR, J.**

Defendant appeals from a judgment of conviction for possession of methamphetamine, a felony. She raises two assignments of error. First, she makes the unpreserved argument that her conviction is void under Article VII (Amended), section 5, of the Oregon Constitution[1] because she was not indicted, there was no preliminary hearing, and she did not knowingly waive indictment or preliminary hearing. She argues that, in view of that failure, the trial court lacked subject matter jurisdiction and committed plain error in entering a conviction. Second, defendant assigns error to the denial of her motion to suppress evidence derived from a consent search of her purse following a noncriminal traffic stop. We reject defendant's constitutional challenge to the trial court's jurisdiction but conclude that the court erred in denying the suppression motion. Accordingly, we reverse defendant's conviction and remand for further proceedings.

We first address defendant's constitutional argument because defendant correctly contends that the question pertains to the trial court's jurisdiction to try her and enter a judgment. *See State v. Keys*, 302 Or App 514, 523-24, 460 P3d 1020, *rev allowed*, 366 Or 760 (2020) ("[I]n the absence of indictment, preliminary hearing, or waiver, the circuit court lacks jurisdiction to try the defendant [for a felony,] and any judgment rendered in the case is void."). The facts relating to defendant's constitutional argument are all procedural. We discuss those facts now and discuss additional facts relevant to defendant's second assignment later when we address that issue.

---

[1] Article VII (Amended), section 5, provides, as pertinent:

"(3) Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4) The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5) The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing."

Defendant was initially charged by complainant's information with unlawful possession of methamphetamine, and a preliminary hearing was set. At the date set for the preliminary hearing, the state asked for a waiver of the preliminary hearing. Defendant was present with substitute counsel because her counsel was unavailable. Defendant's substitute counsel told the court that she had been informed that defendant had agreed to waive the preliminary hearing:

> "I have been told that [defendant's counsel] and [defendant] have spoken and that [defendant] was waiving the prelim if an indictment wasn't ready. And I see [defendant] is nodding—nodding that that is the case."

The court entered an order that defendant had waived indictment. Defendant was subsequently arraigned on a district attorney's information and convicted after a trial to the court.

Defendant contends that her conviction must be set aside as void because the record does not show that she knowingly waived her right to an indictment or a preliminary hearing. Specifically, defendant contends that the record does not show that the court provided her information about her right to a preliminary hearing, nor did the court confirm that defendant understood what she was relinquishing.

The state does not dispute that the record does not affirmatively show that the trial court informed defendant about her right to a preliminary hearing. Rather, the state contends that defendant has not established that the record shows the *absence* of a knowing waiver. *See Keys*, 302 Or App at 524 (court lacks jurisdiction "in the absence" of an indictment, preliminary hearing, or knowing waiver).

We recently held in *State v. Foss-Vigil*, 304 Or App 267, 273-74, 467 P3d 38 (2020), that a conviction will be set aside based on a failure to provide an indictment or preliminary hearing if the record establishes the absence of a knowing waiver. In *Foss-Vigil*, we noted that the record in *Keys* affirmatively established that the lawyer had *not* discussed the waiver with his client before making the purported waiver in court. *Id*. By contrast, we observed that

the record in *Foss-Vigil* suggested that counsel *had* communicated with the defendant about waiving the preliminary hearing and then communicated the defendant's own waiver to the court. *Id*. at 274.

Here, the record is similar to *Foss-Vigil* and the same conclusion applies. Defendant's substitute counsel indicated on the record that she understood that defendant had spoken with her regular counsel about "waiving the prelim," *i.e.*, preliminary hearing, if the indictment was not ready. Substitute counsel further noted for the record that defendant was affirmatively nodding in agreement with that statement. As in *Foss-Vigil*, the record does not affirmatively show that defendant *did not* knowingly waive her right to indictment or a preliminary hearing. Rather, it demonstrates that counsel and defendant had discussed the issue of waiver prior to court and that counsel then communicated defendant's waiver in court. *See also State v. Granberg*, 306 Or App 86, 92, 473 P3d 560 (2020) (concluding that, where the defendant previously had requested a preliminary hearing, the record reflected the absence of a knowing waiver because there was no evidence allowing for the inference that the defendant ever changed his mind about his request).

Defendant, citing *Huffman v. Alexander*, 197 Or 283, 331, 251 P2d 87 (1952), *reh'g den*, 197 Or 331, 253 P2d 289 (1953), contends that the trial court nonetheless had an obligation to ensure that defendant's waiver was knowing by informing defendant on the record about the meaning of the right that she was relinquishing and confirming that defendant understood the nature of that right. In *Huffman*, the court held, based on then-existing principles of habeas corpus, that the petitioner should have had an opportunity to establish in a habeas corpus proceeding that his waiver of indictment in the underlying criminal case was invalid. *Id*. at 301. In summarizing its holding, the court described the court's role in receiving waivers of constitutional rights generally:

"Extreme care must be exercised in each case to see to it that the accused understands the nature of the charge against him, the consequences of possible conviction, the rights

which are his under the Constitution, and the nature and the effect of the waiver of any such rights, particularly when he appears without counsel. This duty should normally be performed in open court and the judicial record should accurately recite what was done, supported wherever possible by an official stenographic transcript of the proceedings on arraignment and at the time of any waiver or plea."

*Id*. at 331.

The record here does not show that the court conducted the inquiry that the Supreme Court described in *Huffman*. But we have not interpreted *Huffman* to require such a colloquy for a waiver of constitutional rights to be valid. *See State v. Jackson*, 172 Or App 414, 422-25, 19 P3d 925 (2001) (although a colloquy on the record is the preferred method of establishing that a waiver of the right to counsel was made knowingly, we will affirm a trial court's acceptance of a defendant's waiver where, under the totality of the circumstances, the record reflects that the defendant knew of the right to counsel and understood the risks of self-representation). We decline to hold that the court was constitutionally required to advise defendant on the record, and we reject defendant's contention that her conviction was void. *See Foss-Vigil*, 304 Or App at 275 (rejecting the defendant's undeveloped argument that the trial court "itself" was required to inform the defendant about the meaning of the right to a preliminary hearing before that right could be waived and observing that the record did "not demonstrate definitively that defendant's waiver was unknowing").

We turn to defendant's second assignment of error. Defendant contends that the trial court erred in denying her motion to suppress evidence that an officer found after defendant consented to the officer's request to search her purse. Defendant argued to the trial court that the officer lacked probable cause to stop and investigate her for the traffic violation of failing to wear a safety belt. Defendant contended that her consent to a search of her purse was the product of an unlawful stop and that any evidence found in her purse following that stop must be suppressed. The court rejected defendant's suppression motion, concluding that the officer had probable cause to stop defendant for the traffic violation of failure to wear a safety belt.

We review the trial court's ruling denying defendant's motion to suppress for legal error, in light of the evidence that was before the court when it made its ruling. *State v. Quigley*, 270 Or App 319, 320, 348 P3d 250 (2015) (reviewing for legal error whether an officer unlawfully extended a traffic stop and whether evidence obtained after an unlawful extension of a traffic stop must be suppressed for legal error); *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012) (as a general rule, a reviewing court evaluates a trial court's ruling on a pretrial motion "in light of the record made before the trial court when it issued the order, not the trial record as it may have developed at some later point"). We are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). If the trial court did not make express findings and the record includes evidence from which the court could have found the facts in more than one way, we will presume that the court decided the facts consistently with the court's ultimate conclusion. *Id.* at 166. We summarize the facts in accordance with those standards.

At approximately 2:38 a.m., Washington County Sheriff's Deputy Mitchell observed a car flash its headlights on and off several times and then make a turn off 185th Street into a Goodwill parking lot without signaling. Based on those observed traffic violations, Mitchell activated his overhead lights and initiated a stop of the car. Defendant was a passenger in that car. The car proceeded about 100 yards through a "fairly large" parking lot before coming to a complete stop in the lot. Mitchell estimated it took about six to eight seconds after the car turned into the parking lot for it to come to a complete stop.

Mitchell testified that he did not make any observations as to whether defendant, who was in the right rear passenger seat, was wearing a seatbelt during any time while the car was moving either on the public highway or in the Goodwill parking lot. Indeed, the undisputed testimony is that Mitchell did not observe defendant and the fact that she was not wearing a seatbelt until he approached the car, which was 10 to 12 seconds after the car had left the public roadway.

At the hearing on the motion to suppress, the state elicited the following testimony from Mitchell:

"Q   Okay. So how—how much time passed from when the car left—when the suspect car left 185th to when you noticed no right rear passenger seatbelt?

"A   Ten seconds. Ten, 12 seconds.

"\* \* \* \* \*

"Q   Did you make any observations about the lack of a seatbelt prior to getting out of your [patrol] car and being on foot?

"A   I did not.

"Q   Okay. So you did not make that observation on 185th?

"A   I did not.

"Q   You did not make that observation as you were driving through the Goodwill parking lot following this vehicle?

"A   I did not."

Mitchell testified that he first observed that defendant was not wearing a shoulder-style seatbelt after both vehicles had stopped and he had walked a couple of steps out of his car and looked at the passengers in the vehicle. At that time, Mitchell observed that there was a driver and three passengers in the car. As he approached the vehicle, he noticed that the right rear passenger, later identified as defendant, was not wearing her shoulder belt, but the left rear passenger was wearing a shoulder belt. The trial court found that Mitchell had not seen defendant make any "unusual movements."

When Mitchell was outside the car, he noted to defendant that she was not wearing her seatbelt. Defendant replied that she had just taken it off. Mitchell testified that he did not believe defendant based on his experience in other traffic stops:

"Q   You believe that she actually did not have her seatbelt on while the car was still on 185th?

"A   That is correct.

"Q   What factors did you look at that led you to that belief?

"A    Based on my experience in the traffic—in traffic stops, normal—normal—the normal person or reasonable person doesn't pop off their seatbelt right away when getting stopped by the police.

"* * * * *

"It's—I never see anyone take their seatbelt off as I'm walking up to the vehicle or—and they're taking their seatbelt off. The only time in my experience that someone does that if, hey, I need to reach over here for this document or that and they take off their seatbelt to reach over. It's—just doesn't happen."

Mitchell had been an officer for about three years at this point and had been involved in "hundreds, if not thousands" of stops.

When Deputy Vargas arrived as back up, Mitchell asked him to obtain defendant's identification. Defendant handed Vargas her identification, and Vargas returned to his patrol car, where he learned from dispatch that defendant was on probation for possession of methamphetamine.

While Vargas was interacting with defendant and communicating with dispatch, Mitchell continued to speak with the driver, who eventually consented to a search of the car. Vargas asked everyone to get out of the car in preparation for the search. Vargas noticed that defendant had a purse and suspected that she had methamphetamine in it. He told her to stand by his patrol car and confirmed with her that she was on probation for possession of methamphetamine. Vargas asked defendant if he could search her purse. Defendant said yes and handed Vargas her purse. The search of defendant's purse led to the discovery of, among other things, a substance that defendant identified as methamphetamine. The state charged defendant with unlawful possession of methamphetamine, a felony, ORS 475.894.[2]

_____

[2]  ORS 475.894 was amended shortly after defendant was convicted. However, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

Defendant moved to suppress the evidence found in her purse and the statements she made during the search, contending that the officer lacked probable cause to ask for and check defendant's identification for the purpose of investigating a traffic violation. *See* ORS 810.410(2) ("A police officer may issue a citation to a person for a traffic violation * * * [w]hen the traffic violation is committed in the police officer's presence; or * * * [w]hen the police officer has probable cause to believe an offense has occurred based on a description of the vehicle or other information received from a police officer who observed the traffic violation."). Defendant further argued that her subsequent consent to allow the officer to search her purse was unlawful because it was tainted by the immediately prior illegal stop. The trial court denied the motion, concluding, "under the circumstances in this case, that the officer had developed reasonable suspicion and then probable cause to issue a citation for * * * a traffic violation of the passenger in the vehicle not having a seatbelt on." Defendant was later tried before the court, and the evidence found in her purse, namely the methamphetamine, was admitted. On appeal, she challenges the court's denial of her motion to suppress.

We turn to the law that applies to the police officer's stop and search of defendant. It is undisputed that Vargas "stopped" defendant when he took her identification to his patrol car. *See State v. Rodriguez-Perez*, 262 Or App 206, 211-12, 325 P3d 39 (2014) (holding that a stop occurred when police approached the defendant, told him that they suspected him of violating the law, and took and retained his identification).[3] Our case law requires that, under Article I,

_____

[3] It is important to note that the stop at issue here was the stop that occurred when Mitchell took defendant's identification from her and returned to his patrol car. The issue in this case is not Mitchell's stop of the driver and vehicle for the driver's traffic violation, but that later stop of defendant. A stop of a car for a traffic violation is not, by itself, a seizure of the passengers in the car, who, at least under law, are free to leave the car and walk away without police interference. *See, e.g.*, *State v. Thompkin*, 341 Or 368, 377, 143 P3d 530 (2006) (stating that "all passengers in a vehicle subject to a valid traffic stop have been 'stopped' (at least physically) but without more, have not been 'seized' as a constitutional matter").

It is also significant that the trial court's decision on the motion to suppress occurred before the Supreme Court decided *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019), which rejected the "unavoidable lull doctrine" and concluded that officers cannot ask questions unrelated to the investigation of the

section 9, of the Oregon Constitution, an officer must develop probable cause—rather than merely reasonable suspicion—to stop a citizen for a traffic violation. *State v. Gordon*, 273 Or App 495, 500, 359 P3d 499 (2015), *rev den*, 358 Or 529 (2016). On appeal, defendant does not dispute that Mitchell subjectively believed that defendant had not been wearing a seatbelt. But she contends that Vargas lacked probable cause to stop her for a seatbelt violation because, not having observed defendant without a seatbelt while riding in a car on a public highway, Mitchell lacked an objectively reasonable belief that defendant had committed that violation.

The state responds that, to develop probable cause, it was not necessary for Mitchell to have seen defendant not wearing a seatbelt when the vehicle was moving on a public highway. Instead, the state contends that Mitchell only needed an objectively reasonable belief that it was more likely than not that defendant had not been wearing a seatbelt while the car was moving on the highway.

Under Article I, section 9, probable cause requires facts which—viewed in the "totality of the circumstances, including the officer's training and experience"—objectively establish that an individual more likely than not has committed the offense. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009); *see also State v. Ratliff*, 82 Or App 479, 483, 728 P2d 896 (1986), *aff'd*, 304 Or 254, 744 P2d 247 (1987) (stating in the reasonable suspicion context that "[t]he significance of any of the facts known to the officer may be enhanced by the officer's special knowledge of the way certain crimes are committed").

---

traffic stop simply because there is an opportunity during a "lull" in which they are confirming someone's license and record information with police records. Rather, the questions and further investigation must have an "independent constitutional justification." *Id*. The original stop that led to this case was of the driver. The state argued in the trial court that there was an independent constitutional justification to investigate defendant for a seatbelt violation and another passenger named Zavala for a different traffic violation. The state argued that, if there was not that independent constitutional justification, the questioning of defendant occurred during an "unavoidable lull." The state does not rely on that now-discarded doctrine on appeal. In deciding *Arreola-Botello*, the Supreme Court noted the disparate treatment of motorists who are Black, Hispanic, or other people of color, and it recognized that a subject-matter limitation on questioning that is limited to constitutional grounds mitigates the risks that traffic stops are based on an officer's explicit or implicit biases. *Id*. at 713 n 9.

Here, the principal evidence that the state offered in the trial court to support probable cause was (1) that the officer observed defendant without a seatbelt after the car was stopped and approximately 10 to 12 seconds after the car left the public highway and (2) that it was the officer's experience that "normal" people do not take off their seatbelts after a car is stopped by the police. The issue is whether it is objectively reasonable to conclude, in the circumstances of this case, that, more likely than not, defendant had committed the traffic offense of not wearing a seatbelt while a passenger in a car that was being operated on a highway.[4] *See Vasquez-Villagomez*, 346 Or at 23-26 (applying that probable cause standard to an officer's belief that the arrested suspects had committed a crime). We conclude that the evidence is insufficient to support probable cause.

As noted above, Mitchell did not notice defendant until the car she was in was completely stopped in the Goodwill parking lot, having left the highway 10 to 12 seconds before. There is no evidence in the record that the deputy had observed defendant either on the highway or during the time that the car drove through the parking lot and came to a stop. Mitchell did not observe defendant doing anything suspicious or unlawful while the car was in motion or right afterward when it came to a stop. Upon first observing defendant when the car was stopped, Mitchell rejected defendant's explanation for her absent seatbelt based solely on his own experience and not on any other observation or suspicion particular to defendant. Indeed, the only observation that Mitchell made that relates to defendant's conduct was that he observed her doing something that was legal. It was legal for a passenger to be sitting without a seatbelt in a stopped vehicle in a parking lot. Of course, we do not discount the possibility that defendant did not have her seatbelt on when the car was operating on the highway.

---

[4] Under ORS 811.210(1)(H), it is a traffic offense for a person who is 16 or older to fail to properly use a seatbelt when "a passenger in a motor vehicle being operated on the highways of this state." Both the state and defendant assume that the car was no longer operating on a highway once the car left 185th Street and entered the Goodwill parking lot. We also assume, without deciding, that that is the case. *See* ORS 801.305(1) (defining a "highway" to include, among other things, every place "open, used, or intended for use of the general public for vehicles or vehicular traffic as a matter of right").

But there is nothing in this record to support that conclusion, let alone meet the more-likely-than-not probable cause threshold. There is no evidence that the deputy even noticed defendant or her lack of a seatbelt until he saw her in the stopped car in the parking lot 10 to 12 seconds after the car had left the public highway.[5]

An officer's belief must be based on "specific and articulable facts, interpreted in the light of the existing circumstances and [the officer's] experience, that the person has committed or is about to commit a crime" or, here, a traffic violation. *State v. Farrar*, 252 Or App 256, 260, 287 P3d 1124 (2012) (so stating in the context of a reasonable-suspicion stop). There are no specific and articulable facts in this record to support the conclusion that defendant had more likely than not committed any traffic violation.

Like the trial court did, the dissent concludes otherwise based on the deputy's experience that "normal" passengers do not take off their seatbelts in parking lots after the police stop the cars in which they are traveling.[6] 307 Or App at 476 (Armstrong, J., dissenting). That analysis improperly uses officer experience to add a fact—that defendant was not wearing a seatbelt—without any evidence in the record from which to reasonably draw that conclusion. As noted above, an officer may consider the facts in light of the officer's training, knowledge, and experience, but that experience cannot itself supply the facts. "Officer intuition

---

[5] We note that, as always, we decide cases based on the factual record before us. We do not conclude that a police officer could never have probable cause to believe a traffic violation occurred upon immediately observing a passenger in a just-parked car without a seatbelt. We conclude only that the officer here did not have probable cause under these facts when he first observed defendant without a seatbelt in a parked car in a parking lot approximately 10 to 12 seconds after the car left the public roadway.

[6] To the extent that the trial court concluded that Mitchell's belief was objectively reasonable because the court found that Mitchell had not seen any "unusual movements," that finding is not supported by any evidence. As noted above, the undisputed evidence is that Mitchell did not observe defendant's lack of a seatbelt until the car was stopped in the parking lot. Even properly crediting the trial court's express findings of fact and any implied findings of fact that support its ultimate conclusion, as we must, there was no evidence to support a finding that Mitchell observed anything at all about defendant until the car was stopped. *See Maciel-Figueroa*, 361 Or at 165-66 (stating our factual standard of review).

and experience alone are not sufficient to meet that objective test." *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014) (discussing the lower reasonable suspicion standard). As we have observed when analyzing whether an officer had reasonable suspicion to make a stop, "[a]n officer's training and experience may help an officer interpret a specific and articulable fact in a given situation or event, but training and experience is not, in and of itself, a specific and articulable fact that can provide" proof of reasonable suspicion or, here, probable cause. *State v. Schmitz*, 299 Or App 170, 178, 448 P3d 699 (2019); *see also State v. Sunderman*, 304 Or App 329, 346-48, 467 P3d 52 (2020) (stating same in the context of a probable cause analysis).

In *Sunderman*, we concluded that the presence of a methamphetamine pipe could not provide probable cause for the presence of methamphetamine when that inference was based solely on the officer's experience that, when he finds methamphetamine pipes in a car, he also finds methamphetamine "75 percent of the time." 304 Or App at 333, 347. We noted that testimony that people who possess methamphetamine pipes are also likely to possess methamphetamine is "not particularized to defendant or her car and does not—by itself—constitute a specific and articulable fact on which probable cause can be based." *Id*. at 347. In this case, the dissent essentially concludes that an officer's initial observation of someone doing something legal and not suspicious is more likely than not indicative of prior illegal activity based solely on officer experience that people do not take off their seatbelts in cars that were recently pulled over by the police—here, in a parking lot at night.

Mitchell's training and experience cannot be used to turn an observed fact—that defendant was not wearing a seatbelt when the car was stopped about 10 to 12 seconds after leaving the highway—into something never observed by the officer—that defendant more likely than not was not wearing a seatbelt when the car was operating on the highway. Officer experience might explain legal but otherwise suspicious behavior to place it in context for the factfinder, but it cannot be a substitute for specific and articulable facts. The fact that defendant was observed not wearing a seatbelt 10 to 12 seconds after the car had left the highway, even

when combined with the officer's training and experience, could not lead a reasonable person to conclude that, more likely than not, defendant had committed the traffic violation of not wearing a seatbelt while in a car operating on the highway.[7] We conclude that the trial court erred in denying the motion to suppress, and in concluding that the officer had probable cause to believe that defendant had committed the traffic violation of not wearing a safety belt in a vehicle operating on the highway.[8]

We next address the question of harmlessness. "We must affirm a judgment, despite any error committed at trial, if we determine that there is little likelihood that the particular error affected the verdict." *State v. Strasser*, 303 Or App 566, 571, 464 P3d 497 (2020) (internal quotation marks and citation omitted). Here, an officer discovered methamphetamine during a search of defendant's purse. That evidence was then admitted in a bench trial, and defendant was convicted of possession of methamphetamine. We readily conclude that the trial court's error in failing to suppress that evidence was not harmless.

---

[7] The trial court reached its conclusion, in part, by analogizing to the circumstance where an officer sees an open alcohol container near a suspect in a stopped car and concludes that the suspect did not likely open the container only after the officer stopped the car. That analogy has significant limitations. First, it is a very common experience for drivers and passengers to unbuckle their safety belts when a car comes to a stop off of a highway, and it presumably is not an everyday experience for people to drink alcohol in a car that just pulled off or to the side of a highway. It *would* seem unusual for someone to open an alcohol container only after being pulled over by the police on a highway. Second, the open-container law differs significantly from the seatbelt law. The open container law makes it an offense when, among other things, a person possesses an open container of alcohol "in a motor vehicle upon a highway" and does not expressly state that the vehicle has to be operating or moving on the highway at the time. ORS 811.170(1)(b). By contrast, the seatbelt law at issue here applies when a vehicle is "being operated" on the "highways." ORS 811.210(1)(a)(H).

[8] The state conceded in the trial court that, if the officer did not have sufficient cause to stop defendant, there was no basis to admit the evidence that came from the ensuing consent search of defendant's purse. The state had the burden of proof in the trial court to show that defendant's consent was voluntary and not an illegal exploitation of the previous illegal stop, but chose not to attempt to meet it. *See State v. Unger*, 356 Or 59, 74-75, 333 P3d 1009 (2014) (stating that, when a defendant has established an illegal stop or search and challenges the validity of a subsequent consent to search, the state bears the burden of proving that the consent was voluntary and not a product of illegal exploitation of the illegal stop or search). The state does not contend otherwise on appeal.

In sum, we reject defendant's constitutional challenge to the trial court's jurisdiction and conclude that her conviction is not void. The trial court could conclude that defendant knowingly waived her right to an indictment or preliminary hearing. However, we conclude that the court erred in denying defendant's motion to suppress. We remand this case to the trial court for further proceedings.

Reversed and remanded.

**MOONEY, J.,** concurring.

I agree with the majority's rejection of defendant's challenge to the trial court's jurisdiction, and I also agree that the court erred when it denied defendant's motion to suppress. I concur in the result, but I write separately to address officer training and experience as it relates to probable cause for a traffic violation.

A police officer must develop probable cause to stop a citizen for a traffic violation. *State v. Gordon*, 273 Or App 495, 500, 359 P3d 499 (2015), *rev den*, 358 Or 529 (2016). Both the majority and the dissent agree that, in the context of this traffic stop, and in the face of defendant's motion to suppress, the state was required to establish that the officer had an objectively reasonable basis to believe that defendant violated the seatbelt law when he stopped her. An officer's belief that a traffic violation "occurred is objectively reasonable if, and only if, the facts *as the officer perceived them* actually satisfy the elements of a traffic infraction." *State v. Tiffin*, 202 Or App 199, 204, 121 P3d 9 (2005) (emphasis added). And an officer may issue a citation for a traffic violation only when it is committed in his or her presence or when the officer has probable cause based on information from another police officer who observed the violation. ORS 810.410(2).[1] In interpreting the statutory predecessor to ORS 810.410 (*formerly* ORS 484.353), the Oregon Supreme

---

[1] ORS 810.410(2) provides:

"A police officer may issue a citation to a person for a traffic violation at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act:

"(a) When the traffic violation is committed in the police officer's presence; or

Court stated that "[n]o logic supports an interpretation that would authorize the officer to detain a person to investigate a traffic infraction for which he or she could not issue a citation." *State v. Painter*, 296 Or 422, 428, 676 P2d 309 (1984). Although there have been several changes to the statute since 1984, the *Painter* case has not been overruled and none of the statutory changes would require a different conclusion about the scope of authority to detain to investigate a traffic violation. It follows that a report from an ordinary citizen, not trained as a law enforcement officer, would not be sufficient for probable cause to support a traffic stop or citation. On the other hand, police officers may stop a citizen for a criminal inquiry upon reasonable suspicion that a crime has been, or is about to be, committed without the requirement of observation by a police officer to support that reasonable suspicion.

Stops for traffic infractions require probable cause. Stops for crimes require reasonable suspicion. Probable cause requires more than reasonable suspicion. Traffic violations are less serious, and carry less onerous penalties, than crimes. It should come as no surprise that those not trained as lawyers—including law enforcement officers— occasionally raise a brow when considering that the law requires more to investigate less. Accepting that there are good reasons for those differences, it is, in my view, worth pausing to consider the role of police training, education, and experience in the daily decisions officers make when they stop and detain citizens, whether for traffic tickets or for criminal conduct.

The majority reminds us that, while an officer may use his or her professional expertise to consider facts in assessing probable cause or reasonable suspicion, he or she is not permitted to create facts wholly out of that expertise. In other words, the officer cannot make it up. The important requirement of articulable facts cannot be overstated. And the majority correctly reminds us in a footnote that there is the risk in this country of disparate treatment of motorists

---

"(b) When the police officer has probable cause to believe an offense has occurred based on a description of the vehicle or other information received from a police officer who observed the traffic violation."

who are people of color when police questioning is not carefully limited to the constitutionally permissible purpose of the stop. And, finally, the dissent correctly reminds us that, at the end of the day, facts may be established through circumstantial evidence.

My agreement with today's result lies in the legal requirement for a traffic stop that a—or some—police officer observe the conduct constituting a traffic violation. It could be another officer reporting his or her observation to the officer initiating the stop—but the requirement of some observation of the underlying conduct is clear. The facts known to the officer in this case did not include observing the conduct that constituted the seatbelt violation. In fact, he did not observe defendant at any time she could have been engaging in the violation.

The reason I write separately is to express departure from what I fear may be viewed as a trend to characterize police training and education as mere "intuition and experience." Our opinions should not be read to minimize the importance of police training and experience. Especially where, as here, the real problem is that a 10 to 12 second gap between the car leaving the street and defendant being seen without a seatbelt in a stopped car is not truly a matter that can or should be resolved by expert police testimony. It is a gap in time, a fact that can be equally judged by anyone—a situation in which an officer has no expertise beyond that of a lay witness describing what he or she observed.

There is a danger in reading our opinions as if they were critical of police training and education. If we are to have any hope of reducing the danger of police profiling and implicit bias that results in disparate treatment of motorists based on the color of their skin, we should not discourage the use of police expertise. The kind of change needed to address racial bias in law enforcement work will not come by asking officers to leave their training and education at the station. It may come instead through the redesign of police training programs that teach and cultivate competency in the human dynamics of racial bias. Our opinions should not be read to discourage that.

Egan, C. J., joins in this concurrence.

**ARMSTRONG, J.,** dissenting.

I agree with the majority's rejection of defendant's constitutional challenge to the trial court's jurisdiction. But for the reasons explained in this dissent, I conclude that the trial court's correctly denied defendant's motion to suppress and would therefore affirm the trial court's judgment.

Under Article I, section 9, of the Oregon Constitution, probable cause requires facts which—viewed in the "totality of the circumstances, including the officer's training and experience"—objectively establish that an individual more likely than not has committed the offense. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009); *see also State v. Ratliff*, 82 Or App 479, 483, 728 P2d 896 (1986), *aff'd*, 304 Or 245, 744 P2d 247 (1987) ("The significance of any of the facts known to the officer may be enhanced by the officer's special knowledge of the way certain crimes are committed."). The facts that Officer Michell observed were that, just 10 seconds after he stopped the vehicle, defendant was not wearing a seatbelt, and the passenger sitting next to defendant in the back seat was wearing one. The fact that Mitchell did not see, and that would be necessary *to establish* a seatbelt violation, was that defendant was not wearing a seatbelt when the vehicle was traveling on the highway. But facts can be established through circumstantial evidence. *See, e.g.*, *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004). The question here is whether Mitchell could reasonably infer, based on seeing defendant not wearing a seatbelt 10 seconds after the vehicle had been pulled over, that defendant probably was not wearing a seatbelt when the vehicle was moving on the highway, particularly when the other rear-seat passenger was still wearing a seatbelt and, in view of the time and location of the stop, there was no reason for the passengers to expect to get out of the car during the stop.

An officer's training and experience can provide context for and bear on the inferences that may be drawn from known or perceived facts. *State v. Maciel*, 254 Or App 530, 535, 295 P3d 145 (2013) ("A police officer's training and experience are relevant considerations that bear on the reasonable factual inferences that an officer may draw.").

Mitchell testified that he had made hundreds to thousands of stops in his three years as a police officer and that, based on his experience, he did not believe defendant's statement that she had just taken her seatbelt off. He inferred, from the fact that defendant was not wearing a seatbelt when the car had stopped, that defendant had not been wearing a seatbelt when the car was travelling:

> "Based on my experience * * * in traffic stops, * * * the normal person or reasonable person doesn't pop off their seatbelt right away when getting stopped by the police.
>
> "* * * * *
>
> "* * * I never see anyone take their seatbelt off as I'm walking up to the vehicle or—and they're taking their seatbelt off. The only time in my experience that someone does that if, hey, I need to reach over here for this document or that and they take off their seatbelt to reach over. It's—just doesn't happen."

I would conclude that Mitchell reasonably could draw the inference, based on the specific and articulable facts that he had observed and considered in the light of his experience and the surrounding circumstances, that defendant probably had not been wearing her seatbelt when the vehicle in which she was traveling was moving on the highway. *See State v. Farrar*, 252 Or App 256, 260, 287 P3d 1124 (2012) (describing objective standard).

Contrary to the majority's characterization, I do not rely on Mitchell's testimony regarding his experience to supply a new fact, 307 Or App at 469-71, but only to provide context for and support the reasonable inferences that Mitchell could make from the facts that Mitchell had observed—*viz.*, defendant not wearing a seatbelt just ten seconds after the car in which she was riding had been pulled over when the passenger sitting next to her was still wearing a seatbelt. Mitchell's acknowledgment of the possibility that, consistent with her statement, defendant had just taken off her seatbelt did not negate probable cause. *See State v. Foster*, 350 Or 161, 173, 252 P3d 292 (2011) (observation made by officer that is consistent with prohibited conduct "does not have to eliminate any possibility of an innocent explanation to provide probable cause").

I would conclude that the facts that Mitchell had observed were sufficient to develop an objectively reasonable belief that, more likely than not, defendant had not been wearing a seatbelt while the vehicle was travelling. There was no requirement for probable cause that the officer actually observe the violation. I would conclude that the totality of the circumstances established an objectively reasonable basis for Mitchell's conclusion that defendant had more likely than not committed a seatbelt violation, and that the court therefore did not err in denying defendant's suppression motion. The majority's contrary conclusion cannot be reconciled with the use that can be made of circumstantial evidence to find a fact in this or any other case. I therefore dissent.

DeVore and Tookey, JJ., join in this dissent.