Submitted November 26, 2019, affirmed July 15, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA DEE CHITTENDEN,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR21361; A167202

470 P3d 424

Defendant appeals a conviction for identity theft, ORS 165.800, challenging the denial of his motion to suppress. Defendant was arrested for a drug crime after the police stopped and detained him for 45 minutes. At the jail, defendant made incriminating statements regarding his involvement in an unrelated crime of identity theft. Defendant moved before trial to suppress the drug evidence and his incriminating statements about identity theft as derived from an unlawful seizure under Article I, section 9. The trial court denied the motion, concluding that the initial encounter was mere conversation and that, at about the same moment as the encounter became a stop, the officer developed reasonable suspicion that defendant and two men with him were all involved in a drug crime, which the officer proceeded to reasonably investigate. Defendant argues that the trial court erred, either because the stop started earlier when the officer lacked reasonable suspicion of a crime or because the stop was unlawfully extended to determine the identity of one of the men with defendant. *Held*: The trial court did not err in denying defendant's motion to suppress. The trial court correctly concluded that the encounter began as mere conversation and only became a stop when the officer gave an order to one of the men. As for extending the stop, defendant's argument relies on an incorrect premise as to the basis for the court's ruling and therefore fails.

Affirmed.

Heather Karabeika, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Defendant appeals his conviction for identity theft, ORS 165.800, challenging the denial of his motion to suppress. Defendant was arrested for a drug crime and, shortly after his arrival at the jail, made incriminating statements regarding his involvement in identity theft. Before trial, defendant moved to suppress the physical evidence and incriminating statements as the fruits of an unlawful seizure under Article I, section 9, of the Oregon Constitution. The motion was denied. We review the denial of a motion to suppress for legal error and are bound by the trial court's factual findings if they are supported by constitutionally sufficient evidence. *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). For the following reasons, we affirm.

On a December night, Officers Olson and Herkamp were dispatched to investigate a report of a "suspicious vehicle" parked in a Gladstone neighborhood that had suffered from frequent car break-ins and drug activity. The caller reported that the vehicle's driver had walked along the caller's property line to a trailer that the caller believed to be associated with drug activity. The caller also said that the driver was carrying a flashlight and a bowl. Officers Olson and Herkamp, both in uniform and accompanied by a trainee, arrived at 10:54 p.m. They parked about 20 feet behind a parked car matching the caller's description and approached on foot. Three men were present in the car, sitting, respectively, in the driver's seat (defendant), the front passenger seat (Magnus), and the backseat (Hornbeck). The back door was open.

Olson introduced himself, described the call that had been received, and asked for everyone's identification. Defendant provided his name and birthdate. Hornbeck produced identification. Magnus declined to identify himself. Just then, Herkamp noticed Hornbeck clutching something tightly in his left fist and, out of concern for Olson's safety, verbally alerted Olson, who immediately ordered Hornbeck to let go of what he had and show his hands. Hornbeck tried to shove something into a small pile of clothes on the backseat before showing his hands.

Olson ordered Hornbeck out of the car. Around that time, Olson observed a wadded-up paper on the backseat, which he recognized as the type often used for packaging and selling methamphetamine. Hornbeck told Olson that he had a "fake gun" on his belt. Defendant and Magnus raised their hands to show that they were unarmed. For safety reasons, Olson removed the "fake gun" from Hornbeck's belt, handcuffed Hornbeck, and placed Hornbeck in the patrol car. While Olson was taking Hornbeck into custody, Officers Lemons and Casab arrived, bringing the total number of officers on the scene to five, including the trainee.

Perceiving defendant to be in control of the car (due to his being in the driver's seat), Olsen asked defendant for consent to retrieve the wadded-up paper from the backseat. Defendant consented, and the paper's contents field-tested positive for methamphetamine. Olson formally arrested Hornbeck and interviewed him. While Olson interviewed Hornbeck, defendant stood outside the car and conversed with Lemons. Lemons thought he recognized defendant as a suspect in an ongoing identity theft investigation, based on a surveillance photo that he had seen. Without telling defendant why he wanted to do so, Lemons asked defendant's permission to take a photo of him. Defendant suggested a "selfie" of the two of them, but Lemons declined. With defendant's permission, Lemons used his cell phone to take a casual photo of defendant. Lemons then left. Meanwhile, Olson was still investigating the suspected drug crimes. As part of that investigation, Olson told defendant to try to get Magnus to disclose his identify, and defendant agreed, spending several minutes speaking privately with Magnus in the car, but Magnus remained unwilling to identify himself. Olsen also asked defendant whose clothes were in the backseat, and, after defendant told him that the clothes and "almost everything in the backseat" belonged to Hornbeck, Olson requested consent to retrieve Hornbeck's clothes, which defendant gave.

At 11:45 p.m., Olson asked defendant's consent to search the car, which defendant gave. (At the suppression hearing, defendant denied having consented to the search of the car. However, Olson testified, and the trial court

expressly found, that defendant consented, and we are bound by that finding.) Olson found a bag with heroin residue in the center console, a small bag of methamphetamine in the backseat, and several items of drug paraphernalia in the car. Defendant was arrested for possession of methamphetamine and taken to jail.

When Lemons learned that defendant was in jail, he went to interview him in connection with the ongoing identity theft investigation. After taking defendant's photo, Lemons had returned to the police station and compared it to the surveillance photo, and it had been a match. Lemons's interview of defendant at the jail began around 1:00 a.m. After advising defendant of his *Miranda* rights, Lemons showed defendant the surveillance photo, and defendant acknowledged that it "appear[ed] to be" him. Defendant then made several incriminating statements about his involvement in identity theft.

Defendant was charged with three counts of identity theft. He moved to suppress the drug evidence from the car and, derivatively, his incriminating statements to Lemons at the jail. Defendant argued that the police had lacked reasonable suspicion to make the initial stop or, alternatively, had unlawfully extended the stop.

The trial court denied the motion. It concluded that the initial encounter was "mere conversation" and therefore did not require the justification of reasonable suspicion. The encounter became a stop, however, when Olson commanded Hornbeck to let go of the item in his hand, show his hands, and exit the car, as that "show of authority would cause a reasonable person to conclude that he or she was not free to leave." At "about the same moment" that the encounter became a stop, Olson developed reasonable suspicion that all three men were involved in a methamphetamine crime and proceeded to conduct what the trial court viewed as a reasonable investigation of that crime:

> "At about the same moment, Officer Olson observed a paper packet on the floor of the car that appeared likely to contain methamphetamine. As a result, the reason for the stop expanded to include an investigation of the crime of possession of methamphetamine. *It was reasonable to suspect*

*that each of the occupants might have criminal responsibility
in connection with the crime, either as persons in possession
of the package, or as persons responsible for the delivery of
the package, or as persons aiding and abetting the possession
or delivery of the paper package. State v. Fair*, 353 Or 588,
608-09, 302 P3d 417 (2013) (officer may temporarily detain
a person whom the officer reasonably suspects of being a
material witness to, or victim of, a recent or ongoing crime).

"The scope of Officer Olson's investigation was reasonable. Although Mr. Hornbeck was the primary suspect, and
was placed in custody before being interviewed, it was reasonable and necessary to interview all of the occupants of
the vehicle in connection with the matter before concluding
it. *Id*. ("[k]nowing the identity of and the information to be
provided by a witness to or a victim of a crime is as fundamental to our criminal justice system as is apprehension of
a potential offender"); *State v. Acuna*, 264 Or App 158, 168-
69, 331 P3d 1040 (2014) (odor [of marijuana] gave reasonable suspicion that one or more of three men was involved in
illegal drug activity that warranted further investigation).

"The fact that one of the occupants was unwilling to
provide his name or identification extended the time it took
to conclude the investigation, but the amount of time associated with the effort was reasonable and it related to the
investigation.

"The investigation also included other reasonable steps
that occupied time prior to the search of the car, such as
field-testing the contents of the paper packet, obtaining
permission to remove the paper packet and, later, permission to remove the items of clothing from the rear of the car.
Some amount of time was spent also conferring among the
officers present at the scene about the investigation."

(Emphasis added.)

After the trial court denied defendant's motion to
suppress, defendant entered a conditional guilty plea to one
count of identity theft, reserving the right to challenge the
denial of the motion. On appeal of the judgment of conviction, defendant raises a single assignment of error, challenging the denial of his motion to suppress.[1]

---

[1] Defendant initially raised a second assignment of error, regarding his sentence, but withdrew that assignment of error after the trial court made a correction to the judgment.

Defendant first argues that he was stopped as soon as the police approached the car and that such stop was unlawful because the police lacked reasonable suspicion that he had committed any crime. We agree with the trial court that the initial encounter was a mere conversation, not a stop, and do not address that aspect of defendant's argument further. *See State v. Backstrand*, 354 Or 392, 403, 313 P3d 1084 (2013) (an officer does not seize a person merely by approaching the person and "asking a question, requesting information, or seeking [that] individual's cooperation," nor does a "request for identification" give rise to a seizure, at least absent a "threatening or coercive show of authority requiring compliance with the officer's request" (internal quotation marks omitted)); *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010) ("mere conversation" refers to a category of noncoercive police encounters that do not constitute seizures and do not require justification to be lawful).

Defendant next argues that Olson unlawfully extended the stop—the stop that began when Olson ordered Hornbeck out of the car[2]—to try to determine Magnus's identity. Defendant does not contest that Olson had reasonable suspicion that Hornbeck was involved in a drug crime. Defendant argues only that the trial court erred in concluding that an "approximately 45-minute detention was justified to determine the remaining passenger's [Magnus's] identity."

The difficulty with defendant's argument is that it is premised on Olson having had reasonable suspicion of a drug crime only as to Hornbeck, not as to defendant and Magnus. That is, it assumes that the trial court concluded that defendant was lawfully detained only as a witness, not as a suspect. The trial court's written explanation of its ruling is admittedly somewhat confusing, in that the court expressly stated that "[i]t was reasonable to suspect that each of the occupants might have criminal responsibility in connection with the crime, either as persons in possession of the package, or as persons responsible for the delivery of the package, or as persons aiding and abetting the possession

---

[2] The state does not contest that, once Olson ordered Hornbeck out of the car, all of the car's occupants were stopped.

or delivery of the paper package," but then proceeded to cite *Fair*, 353 Or at 608-09, with a parenthetical stating that an "officer may temporarily detain a person whom the officer reasonably suspects of being a material witness to, or victim of, a recent or ongoing crime."

Although we recognize the disconnect between the trial court's express explanation of its reasoning and the case citation that it provided, we do not understand the latter to override the former. Even if the trial court implicitly concluded that defendant could be detained as a material witness under *Fair*, it also *expressly* concluded that Olson had reasonable suspicion to investigate all three men for drug crimes. That the trial court intended to rely on both reasons for its ruling is consistent with the next paragraph of its opinion, wherein the court stated that, "[a]lthough Mr. Hornbeck was the primary suspect, and was placed in custody before being interviewed, it was reasonable and necessary to interview all of the occupants of the vehicle in connection with the matter before concluding it," and then cited *both Fair* (for the proposition that "[k]nowing the identity of and the information to be provided by a witness to or a victim of a crime is as fundamental to our criminal justice system as is apprehension of a potential offender") *and Acuna*, 264 Or App at 168-69 (for the proposition that the "odor [of marijuana] gave reasonable suspicion that one or more of three men was involved in illegal drug activity that warranted further investigation"). The trial court also stated in its fact findings that, with respect to Olson's investigatory actions up to 11:45 p.m., "[i]t was not obvious whether Mr. Hornbeck should be the only one charged, or whether defendant or defendant or Mr. Magnus should also be charged with possession or a related crime."

We therefore agree with the state that the narrow argument presented by defendant is unavailing. Defendant is correct that *Fair*'s conditions for temporary on-the-scene detention of "a likely material witness" without a warrant are not met here. Most notably, there is no indication that Olson reasonably believed that defendant had witnessed any recent crime "involving danger of forcible injury to a person." *See Fair*, 353 Or at 609 (stating three conditions necessary for warrantless temporary detention of "a likely

material witness," the first of which is that "the officer reasonably believes that an offense involving danger of forcible injury to a person recently has been committed nearby"). But defendant's role as a potential witness was only one basis for the trial court's ruling.

The trial court also concluded that Olson had reasonable suspicion as to defendant himself—*i.e.*, that defendant was lawfully detained as a suspect—and defendant has not developed any argument that Olson lacked reasonable suspicion as to defendant or exceeded the scope of a permissible investigation of defendant. We therefore express no opinion on those issues, which are not before us on appeal, except to note briefly that, although defendant describes the "approximately 45-minute detention" as having been spent trying to "determine [Magnus's] identity," the trial court expressly found that Olson engaged in a number of investigatory activities during that time, including interviewing Hornbeck, obtaining defendant's consent to remove the paper from the backseat, field-testing the contents of the paper, obtaining defendant's consent to remove the clothes from the backseat, making efforts to identify Magnus, and conferring with other officers.[3]

Finally, defendant argues that, even if the stop was lawful, the police lacked probable cause to arrest him after searching the car and that his incriminating statements to Lemons at the jail therefore must be suppressed. Defendant never challenged in the trial court whether the police had probable cause to arrest him after searching the car. He does not request plain-error review, nor would such an argument be susceptible to plain-error review. We therefore do not address that unpreserved argument. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."); ORAP 5.45(4)(a) ("Each assignment of error must demonstrate that the question or issue presented by

---

[3] We also note that, although the Oregon Supreme Court recently held in *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), that there are both durational and subject-matter limitations on law enforcement officers' actions and inquiries during a traffic stop, that opinion was issued after the briefing was completed in this case, and defendant has not made any arguments in this case that would implicate *Arreola-Botello*.

the assignment of error timely and properly was raised and preserved in the lower court.”).

Affirmed.