Argued and submitted May 29, 2019; conviction on Count 3 reversed, remanded for resentencing, otherwise affirmed December 16, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON ALLEN SMITH,
*Defendant-Appellant.*

Clatsop County Circuit Court
16CR27682; A164510

479 P3d 553

In this criminal appeal, defendant challenges the denial of his motion for judgment of acquittal on a charge of interfering with a peace officer (IPO), ORS 162.247(1)(b). The IPO charge stemmed from defendant's refusal to remain at the scene when a detective ordered him to do so. Defendant argues that the detective's order was not a "lawful order" because it was not justified by an objectively reasonable suspicion that defendant was committing or about to commit a crime, and, therefore, the stop was unconstitutional. The state argues that the detective had reasonable suspicion that defendant committed or was about to commit both unlawful use of vehicle (UUV) and theft and, alternatively, if the stop was not justified by reasonable suspicion, the detective constitutionally detained defendant as a material witness to a crime. *Held*: The trial court erred in denying the motion for a judgment of acquittal. The detective's suspicion of defendant having committed UUV or theft was not objectively reasonable. Further, the stop was not justified as a material witness detention.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.

Cindee S. Matyas, Judge.

John P. Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

POWERS, J.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for one count of interfering with a peace officer (IPO), ORS 162.247(1)(b), and one count of resisting arrest, ORS 162.315. Defendant makes a plain-error argument with respect to the resisting arrest charge, and we reject that argument without discussion. Defendant also assigns error to the trial court's denial of his motion for a judgment of acquittal on the IPO charge. Specifically, he argues that the arresting officer did not have reasonable suspicion to order defendant to remain at the scene, and, therefore, the officer's detention of defendant amounted to an unconstitutional stop. The state argues that the officer's order was justified by reasonable suspicion and, alternatively, if the officer did not have reasonable suspicion, the officer was nonetheless justified to stop defendant as a "material witness" to a crime. We reverse defendant's IPO conviction.

In reviewing a trial court's denial of a motion for a judgment of acquittal, we examine the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting all reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Colpo*, 305 Or App 690, 691, 472 P3d 277 (2020). We set out the facts in accordance with that standard.

## I.   FACTS AND PROCEDURAL HISTORY

Defendant drove to the Seaside Police Department lobby and immediately handed the receptionist, Burk, a cell phone. Defendant was "agitated," spoke very quickly and loudly, and his face was red. He told Burk, "Here's the phone. I can't deal with them anymore. I can't go back there." He also told Burk that it was his mother's phone and his mother had been using it to "ruin [his] life."

Burk told defendant that his mother had called 9-1-1 while defendant was on his way to the station and that officers were being dispatched to his mother's residence. Burk asked defendant whether he had permission to use the truck that he had driven to the station, and defendant responded, "Yes. I do."

Detective Sergeant Knight, who was also in the lobby assisting another individual in an unrelated matter, overheard defendant's conversation with Burk. As defendant turned to leave, Knight turned his attention to defendant, introduced himself, and said, "Hey, why don't we hang out here. Let's find out what's going on at your house, so we can figure out—because officers are there." Defendant told Knight "no," and turned to leave. Knight repeated: "Hey, why don't we just hangout. Let's figure out what's going on at your house, stay here[.]" Again, defendant told Knight no. Finally, Knight told defendant: "Look, *** you're not free to go. You are being detained so we can investigate what's going on at your house." Once again, defendant said "no," and attempted to leave. Knight testified that he "grabbed [defendant's] arm to try to get ahold of it, and that's when [defendant] ripped it from me and started pushing past me." Knight and defendant struggled until Knight was able to handcuff defendant with the assistance of other officers. Defendant was taken into custody and transported to the hospital where X-rays revealed that defendant's leg was broken in three places. Ultimately, defendant was charged with IPO and resisting arrest.[1]

At trial, Knight testified that he had reasonable suspicion that defendant may have committed theft or unauthorized use of a motor vehicle:

> "Well, based off the information—the only information that I had, that there was a 9-1-1 call, that he admitted taking his mother's cell phone, possibly the crime of theft. 9-1-1 calls are an emergency situation, so it could have been a domestic disturbance. *** And then he's being asked about the truck. I did not know what information the dispatcher had. However, she's asking if he has permission to have the truck, so in my eyes—or in my mind, I'm thinking maybe something to do with the call was about that.

> So I—possibly he was about to commit unauthorized use of a motor vehicle ***."

Knight acknowledged that, at the time he detained defendant, he did not know whether defendant had permission

---

[1] Defendant was also charged with attempted assault of a public safety officer, ORS 163.208, but was acquitted of that charge.

to use the truck and did not know why defendant's mother called 9-1-1.

At the close of the state's case, defendant moved for a judgment of acquittal, arguing with respect to the IPO charge that Knight did not have probable cause or reasonable suspicion to stop defendant. The trial court denied defendant's motion:

> "There are plenty of facts in dispute. And everything— at least at this point—leading up to the encounter suggests an alarming event has occurred. A highly agitated [defendant], a lot of loud voices, a talk of 9-1-1 from a family member. Questions about a phone. A lot of nonsensical communication. Questions about a truck.

> "And I think, considering those facts in the light most favorable to the State here, I think there's plenty for the jury to consider. They may disagree with its interpretation, but at least at this point, I think it survives a motion for judgment of acquittal on each count."

Subsequently, the jury found defendant guilty of IPO and resisting arrest and defendant filed this appeal.

## II.   DISCUSSION

On appeal, there is no dispute that Knight stopped defendant as he was trying to leave the police station; rather, the dispute hinges on whether the stop was justified by reasonable suspicion. The parties agree that, for Knight's order to be a "lawful order" under the IPO statute and in the context of this case, it must have been justified by reasonable suspicion to detain defendant. The parties diverge, however, on whether Knight reasonably suspected defendant of committing (or having recently committed) a crime. In a footnote, the state also argues that, under the principle described in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), this court should affirm on the alternative basis that Knight did not need reasonable suspicion to stop defendant because defendant was a material witness to a crime. For the reasons explained below, we conclude that Knight lacked reasonable suspicion to stop defendant, and we further reject the state's alternative basis for affirmance.

## A. State v. Kreis *and Lawful Orders*

The Supreme Court recently has discussed what constitutes a "lawful order" for purposes of interfering with a police officer as described in ORS 162.247(1)(b).[2] In *State v. Kreis*, 365 Or 659, 667-69, 451 P3d 954 (2019), which was decided after briefing and argument of this case, the court held that an order is not a "lawful order" if it is not supported by reasonable suspicion and thus violates an individual's rights under Article I, section 9, of the Oregon Constitution.[3]

In *Kreis*, officers spotted the defendant in the parking lot of a restaurant—which had recently been the site of multiple thefts—after midnight, standing near one of the few cars in the parking lot. Officers suspected that the defendant was trying to break into one of the cars or attempting to drive under the influence of intoxicants (DUII). One of the officers ran the vehicle's license plate number, and, although the defendant matched the description of the owner of that vehicle, the officer remained suspicious. One officer approached the defendant to initiate a conversation, but the defendant did not respond, turned away, and started to walk away from the parking lot. *Id.*

Both officers caught up with the defendant and informed him that he was not free to leave until he told them "his name, whether the car that he had been standing near was his, and whether he was a restaurant employee." *Id.* at 661. Defendant refused and was arrested for IPO. *Id.* at 662.

At trial, the defendant moved for a judgment of acquittal on the IPO charge and argued that the arresting

---

[2] ORS 162.247 provides, in part:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer ***:

"*****

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer."

[3] Article I, section 9, provides, in part, that:

"[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

officer did not have reasonable suspicion to issue a "lawful order" for the defendant to turn around to be handcuffed. The state argued the opposite: that the arresting officer had reasonable suspicion, and that, alternatively, "his order that defendant turn and be handcuffed was justified by reasonable officer-safety concerns." The trial court denied the motion, and the defendant appealed. *Id.* at 663. We affirmed the trial court on the basis that "orders issued to protect officer safety were lawful orders." *Id.* at 664.

On appeal to the Supreme Court, the defendant renewed his argument that the officer's order was not a "lawful order." The parties disputed whether the order was supported by reasonable suspicion. *Id.* at 664-65. Ultimately, the court concluded that the order was not supported by reasonable suspicion of DUII or attempted DUII. *Id.* at 667.

The remaining question was whether the order was lawful. The court noted that a lawful order is one that is "authorized by, and is not contrary to, substantive law." And, to aid in that determination, "a court must consider the authority granted, and the restrictions imposed, by the substantive law[.]" The court also noted that constitutional provisions are included in the ambit of "substantive law." *Id.* at 669 (discussing *State v. Illig-Renn*, 341 Or 228, 238, 142 P3d 62 (2006), which held that the IPO statute does not encompass "any refusal to follow an order that is inconsistent with the substantive law, including constitutional provisions" (internal quotation marks omitted)).

Ultimately, the court held that "[a]n order that restrains an individual's liberty in violation of Article I, section 9, is not a 'lawful order[.]'" *Id.* at 677. Furthermore, because the arresting officer "did not have reasonable suspicion that defendant had committed or was about to commit DUII or attempted DUII, his seizure of defendant violated Article I, section 9." Therefore, the officer's "subsequent order that defendant turn and be handcuffed also was not constitutionally justified and was therefore inconsistent with that constitutional provision." *Id.* at 678.

Thus, if Knight did not have reasonable suspicion that defendant had committed or was about to commit a crime, then his order for defendant to remain at the scene was not a "lawful order," and, consequently, Knight's stop of defendant would be unconstitutional.

B.  *Reasonable Suspicion*

In *State v. Maciel-Figueroa*, 361 Or 163, 182, 389 P3d 1121 (2017), the Supreme Court articulated that reasonable suspicion is necessary for an investigative stop. The court explained:

> "For police officers to make a stop, they must reasonably suspect—based on specific and articulable facts—that the person committed a specific crime or type of crime or was about to commit a specific crime or type of crime. For a court to determine that an investigative stop was lawful under Article I, section 9, the court (1) must find that the officers actually suspected that the stopped person had committed a specific crime or type of crime, or was about to commit a specific crime or type of crime, and (2) must conclude, based on the record, that the officers' subjective belief—their suspicion—was objectively reasonable under the totality of the circumstances existing at the time of the stop."

*Id.* The court also noted that

> "the state need not prove that the articulated facts give rise to a conclusion with certainty that a crime has occurred or is about to occur; instead, based on the specific facts known and articulated by the officer, a reviewing court must conclude that the officer's subjective belief could be true, as a matter of logic."

*Id.* at 184 (emphasis omitted). "The state has the burden of establishing that an officer had both subjective and objective reasonable suspicion." *State v. Westcott*, 282 Or App 614, 618, 385 P3d 1286 (2016), *rev den*, 361 Or 486 (2017) (internal quotation marks and citation omitted). Further, as the court described in *Kreis*, "[a]n officer's suspicion must be particularized to the individual based on the individual's own conduct," and that reasonable suspicion "requires less than probable cause but more than mere speculation." 365 Or at 665.

As noted above, Knight testified that he had rea-
sonable suspicion that defendant committed two crimes:
UUV and theft. We take each suspected crime in turn.

1.  *Unlawful use of a vehicle*

With respect to UUV, the state asserts that Knight
had reasonable suspicion that defendant did not have per-
mission to use his mother's vehicle, based on the 9-1-1 call,
the fact that the police were on their way to her residence
in response to that call, defendant's agitation, and the dis-
patcher's question whether defendant had permission to use
the truck. As explained below, we conclude that those cir-
cumstances were not sufficient to justify Knight's seizure of
defendant because they do not support reasonable suspicion
of UUV.

Under ORS 164.135, for use of a vehicle to be unlaw-
ful, the use must be without (or beyond the scope of) the
owner's consent.[4] *See State v. Gibson*, 268 Or App 428, 430,
324 P3d 168 (2015) (noting that the person using the vehicle
"must know that he or she does not have the owner's con-
sent" to do so).

Here, Knight did not offer any specific and artic-
ulable facts particularized to defendant's conduct that he
used his mother's vehicle without her consent. All Knight
knew at the time that he detained defendant was that
(1) the police had been called to defendant's mother's house
for an unknown reason because of her 9-1-1 call; (2) Burk
had asked defendant if he had permission to use the vehicle;
and (3) defendant had given an affirmative reply to Burk's
question. Knight testified that he was dubious of defendant's
response because "unfortunately[,] not everybody tells the
truth."

---

[4] ORS 164.135 has been amended since defendant committed his crimes.
Or Laws 2019, ch 530, § 1. Because of that amendment, we refer to the version of
the statute in effect during the events in question. ORS 164.135 (2015) provides,
in part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or other-
wise uses another's vehicle, boat or aircraft without the consent of the
owner[.]"

     The interaction between Burk and defendant—Burk asking whether defendant had permission to use the truck and defendant stating, "Yes. I do."—carries little, if any, weight in the reasonable suspicion calculus. We conclude that a mere question and answer that denies the existence of criminal conduct, without more, cannot provide the basis for reasonable suspicion. Notwithstanding Knight's skepticism as to the truthfulness of the answer, which was not based on anything defendant said or did, there was nothing else to the interaction between Burk and defendant to suggest criminal activity was afoot.[5] Indeed, even if defendant had answered the question in an evasive or nonresponsive way, that still would not have amounted to reasonable suspicion. *See State v. Frias*, 229 Or App 60, 66, 210 P3d 914 (2009) ("It was not objectively reasonable to suspect present criminal drug activity solely because defendant had been involved in drugs in the past and did not want to fully answer police questions.").

     In short, because there were insufficient specific and articulable facts to support a conclusion that defendant committed or was about to commit UUV, Knight's suspicion was not objectively reasonable.

     2.   *Theft of the cell phone*

     With respect to theft, defendant argues that Knight's suspicion that defendant committed theft of his mother's phone was not objectively reasonable. Specifically, defendant contends that the facts known to Knight at the time of his interaction with defendant were insufficient to establish reasonable suspicion of theft, because there were no facts suggesting that defendant intended to permanently deprive his mother of the phone. The state remonstrates that "because defendant admitted to taking his mother's cell phone—a person who had called 9-1-1 prior to defendant's arrival at the police station—Sergeant Knight was justified in stopping defendant to determine whether a theft had in fact been committed." We agree with defendant's position.

---

[5] To the extent that the state relies on Knight's suspicion about defendant's truthfulness, we reject the notion that an officer can form objectively reasonable suspicion that someone is lying based solely on testimony that "not everybody tells the truth."

ORS 164.015 describes the crime of theft.[6] One of the elements of theft is an "intent to permanently deprive a person of property[.]" *State v. Browning*, 282 Or App 1, 6, 386 P3d 192 (2016), *rev den*, 361 Or 311 (2017). And, as the state acknowledges, the focus is on the intent at the time of the taking. *See State v. Spears*, 223 Or App 675, 677, 196 P3d 1037 (2008) (concluding that "for purposes of the crime of theft, a person who acts with the requisite intent 'takes' the property of another when he or she moves that property, however slightly").

When Knight confronted defendant, Knight knew only that (1) defendant had had possession of his mother's phone and had given it to Burk; and (2) defendant's mother had called 9-1-1 and officers were being sent to her home. Knight did not know the substance of the 9-1-1 call, nor did he know any of the circumstances that led defendant to hand the phone over to police as he entered the police station. The facts known by Knight, as they pertain to defendant's conduct, do not give rise to an objectively reasonable suspicion that defendant intended to permanently deprive his mother of the phone.

Specifically, Knight did not testify to any facts that would lead to any reasonable inferences regarding defendant's intent at the time that defendant took his mother's phone. At best, Knight had a hunch that defendant intended to permanently deprive his mother of her phone. *See State v. Walker*, 277 Or App 397, 401, 372 P3d 540, *rev den*, 360 Or 423 (2016) (law enforcement may not "interfere with [a] person's liberty based only on intuition or a hunch").

To the extent that the state relies on defendant admitting that he was in possession of his mother's phone, mere possession of someone else's phone, without more, is

---

[6] ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1)   Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

ORS 164.015 has been amended since defendant committed his crimes. Or Laws 2016, ch 47, § 7. Because that amendment does not affect our analysis, we refer to the current version of the statute in this opinion.

not inherently suspicious of criminal conduct. We have previously stated that

> "a set of facts will not always create reasonable suspicion just because those facts are consistent with, but do not necessarily suggest, a crime being committed. Wearing clothing while driving, to use an extreme example, is also consistent with the transportation of narcotics. Less extremely, so too (for all we know) is wearing cologne. This consistency, however, would not be enough to support reasonable suspicion."

*State v. Alvarado*, 257 Or App 612, 629, 307 P3d 540 (2013). Here, the bare fact that defendant admitted possession of his mother's phone is an example of a fact consistent with, but not necessarily suggestive of, a crime currently being committed or having recently been committed.

In short, the facts known to Knight based on defendant's behavior are insufficient to establish that defendant was attempting to permanently deprive his mother of her phone. Accordingly, we conclude that Knight's suspicion that defendant committed a theft of his mother's phone was not objectively reasonable.

C.   *"Material Witness" Stop*

The state alternatively argues in a footnote that, if Knight did not have reasonable suspicion of a crime, Knight's stop of defendant was nonetheless justified because defendant was a material witness to a crime. Citing *State v. Fair*, 353 Or 588, 302 P3d 417 (2013), and *Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (describing the "right for the wrong reason" doctrine), the state argues that we should affirm on the alternative basis that, because "the [9-1-1] call discussed defendant, coupled with defendant's agitated state and *** Knight's concern about a domestic dispute, it was reasonable for *** Knight to stop defendant in order to investigate what required the [9-1-1] call in the first place."

In *Fair*, the Supreme Court held that "officers constitutionally may, in appropriate circumstances, stop and temporarily detain for questioning a person whom they

reasonably believe is a potential material witness to a crime." 353 Or at 609. That kind of "material witness" stop will be constitutional if

> "(1) the officer reasonably believes that an offense involving danger of forcible injury to a person recently has been committed nearby; (2) the officer reasonably believes that the person has knowledge that may aid the investigation of the suspected crime; and (3) the detention is reasonably necessary to obtain or verify the identity of the person, or to obtain an account of the crime."

*Id.*

Here, even if the *Outdoor Media Dimensions Inc.* conditions were met, the requirements discussed in *Fair* are not. That is, this is not a situation where the material witness stop would apply because it was not reasonable for Knight to believe that defendant had been recently involved in an offense involving danger of forcible injury. *See State v. Chittenden*, 305 Or App 483, 490-91, 470 P3d 424 (2020) (concluding that the material witness exception did not apply because there was "no indication" that the officer reasonably believed that the defendant had witnessed any recent crime "'involving danger of forcible injury to a person'" (quoting *Fair*, 353 Or at 609)). Knight had no knowledge of the contents of the 9-1-1 call, nor had the state established any other facts that would support an officer's reasonable belief that an offense involving danger of forcible injury had recently occurred. Further, other than impermissible conjecture, there is nothing to suggest that defendant had any knowledge of any purported crime. Rather, all Knight knew was that defendant's mother had called 9-1-1 and that officers were dispatched to her residence based on that call. Accordingly, we reject the state's alternative basis for affirmance.

## III. CONCLUSION

In sum, Knight's suspicion of defendant having committed UUV or theft was not objectively reasonable; therefore, his order to defendant to remain at the scene was unlawful. Further, his stop of defendant was not justified as a "material witness" detention. Thus, because defendant was

unconstitutionally stopped, the trial court erred in denying his motion for judgment of acquittal on the IPO charge.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.