No. 966 November 13, 2025 699

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES BERNARD LAYTON,
aka Charles Layton,
*Defendant-Appellant.*

Jackson County Circuit Court
16CR21540; A181483

Laura A. Cromwell, Judge.

Argued and submitted September 8, 2025.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Adam Holbrook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

In this criminal case, defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(1), and reckless driving, ORS 163.195, entered after a conditional guilty plea. Defendant assigns error to the trial court's denial of his motion to suppress evidence collected by Oregon State Police (OSP) after local law enforcement responded to a minor traffic collision involving defendant and another driver. Defendant argues that the local law enforcement officers initially stopped him and began a DUII investigation prior to the trooper's arrival and (1) that the state failed to prove that the local officers had reasonable suspicion to justify that DUII investigation, and (2) that the state failed to prove that the trooper would have inevitably discovered the challenged evidence had that initial DUII investigation not occurred. We agree with defendant. Accordingly, we reverse and remand.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress for legal error and are bound by the trial court's factual findings if they are supported by evidence in the record. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). We also presume that the court implicitly made any factual findings necessary to support its conclusion. *State v. Craig*, 284 Or App 786, 787, 395 P3d 634, *rev den*, 361 Or 803 (2017). If those implicit findings are supported by the record, we are bound by them. *Id.*

## BACKGROUND

The historical facts are not disputed. On January 29, 2016, Trooper Neuenschwander of the Oregon State Police (OSP) was dispatched to a two-car collision that took place at the intersection of a local road and an off-ramp of Interstate 5. Before Neuenschwander got there, a Talent police officer and a Jackson County sheriff's deputy arrived at the scene of the crash; their precise time of arrival is not established in the record. While en route, dispatch informed Neuenschwander that the accident involved a possible DUII. It is unclear from the record whether the information regarding a possible DUII was received by dispatch from

the Talent police officer, the sheriff's deputy, or the other driver involved in the crash, who made the initial call following the collision.

When Neuenschwander arrived ten to fifteen minutes later, defendant and the two local officers were all standing outside of their vehicles, at least one squad car had its emergency lights activated, and one of the local officers had possession of defendant's driver's license. There were no injuries and both vehicles were fully operable. The local officer handed Neuenschwander defendant's driver's license and told him that, based on the local officers' investigation, there was a possible DUII and that defendant had admitted to consuming alcohol. With that prior knowledge, Neuenschwander began his own traffic collision and DUII investigation. He interviewed defendant and the other driver, and he conducted field sobriety tests on defendant, observing considerable signs of impairment. Neuenschwander then arrested defendant for DUII, reckless driving, and reckless endangerment. Upon arrest, Neuenschwander obtained consent from defendant to conduct a blood alcohol content (BAC) test, which returned a reading of 0.16 percent, twice the legal limit.

Before trial, defendant moved to suppress the evidence obtained as a result of "the warrantless stop, warrantless search, and warrantless arrest of defendant on or about January 29, 2016." Defendant moved to have suppressed "all objects, information, statements, and observations obtained" from the stop, including the results of the field sobriety tests and the breath test, and, by amendment at the motion hearing, his identification. Both parties agreed that defendant had been stopped and seized by local officers ("stopping officers") prior to Neuenschwander's arrival.

At the motion hearing, the only evidence that the state presented was the testimony of Neuenschwander, dash camera footage from Neuenschwander's squad car, and a report created by the OSP dispatch on the night of the crash. Neither of the stopping officers testified, and no footage from their squad cars was presented. The trial court denied the motion, relying on the facts laid out here. In response to defendant's argument that the state failed

to meet its burden as to the legality of the stop because the stopping officers did not testify and no evidence was presented regarding the initial stop, the trial court found that "any police officer who came upon the scene of the [crash], had contact with [d]efendant and viewed the damage to each vehicle would have reasonable suspicion that [d]efendant had committed one or more traffic crimes."[1] Defendant later entered a conditional guilty plea for DUII and reckless driving, reserving the right to appeal the denial of the motion to suppress.

On appeal, defendant argues that the state failed to establish with sufficient evidence in the record (1) that the stopping officers had reasonable suspicion before extending the stop into a DUII investigation or (2) that Neuenschwander would have inevitably discovered the evidence sought to be suppressed absent the unlawful stop. The state responds that the trial court implicitly found that the stopping officers had reasonable suspicion prior to the stop and that the record supports that finding. Alternatively, the state argues that Neuenschwander would have inevitably discovered defendant's outward signs of intoxication by following predictable investigatory procedures for investigating a traffic collision. For the reasons that follow, we conclude that the trial court erred in denying defendant's motion to suppress.

## ANALYSIS

Article I, section 9, of the Oregon Constitution protects individuals from "unreasonable search, or seizure." Warrantless seizures are *per se* unreasonable unless they fall within one of the well-delineated exceptions to the warrant requirement. *State v. Gilkey*, 317 Or App 752, 757, 505 P3d 1029 (2022). One of those exceptions is the investigatory-stop exception, under which a law enforcement official may briefly detain an individual if the officer has reasonable suspicion, supported by specific and articulable facts, that the individual has committed or is about to commit a crime.

---

[1] We understand the trial court to have been referring to one or more crimes involving a vehicle, such as DUII, rather than a traffic violation, as may also be cause for a traffic stop, given the court's reference to reasonable suspicion. *See State v. Aguilar*, 307 Or App 457, 467, 478 P3d 558 (2020) (explaining that probable cause, rather than merely reasonable suspicion, is required to make a stop for a traffic violation).

*Id.* A lawful traffic stop may extend into an investigatory stop if the stopping officer develops reasonable suspicion of a crime other than the traffic violation. *Id.* Importantly, an officer's conduct and questioning must remain related to the original purpose for the stop unless reasonable suspicion of a separate crime first arises. *See State v. Arreola-Botello*, 365 Or 695, 711, 451 P3d 939 (2019) (explaining that, to hold otherwise would "mak[e] meaningless the rule which requires an officer to have reasonable suspicion before stopping an individual to conduct a criminal investigation").

For a reasonable suspicion finding, a trial court (1) must find that the stopping officer had a subjective belief that the stopped individual committed or was about to commit a specific crime, and (2) "must conclude, based on the record, that the officers' subjective belief—their suspicion— was objectively reasonable under the totality of the circumstances existing at the time of the stop." *Maciel-Figueroa*, 361 Or at 182; *see also See State v. Busacker*, 154 Or App 528, 534, 962 P2d 723, *rev den*, 327 Or 620 (1998) ("[R]easonable suspicion must be based on a subjective belief *by the stopping officer* that a crime has been committed, and that subjective belief must be objectively reasonable under the totality of the circumstances." (Internal quotations omitted; emphasis added.)). The state bears the burden of establishing that the stopping officer had both subjective and objective reasonable suspicion. *State v. Smith*, 308 Or App 84, 91, 479 P3d 553 (2020).

Evidence that is obtained as a result of an unconstitutional act is generally suppressed. *Arreola-Botello*, 365 Or at 714. The state may not take advantage at trial of information obtained in violation of Article I, section 9, unless an exception applies. *State v. Thompson*, 370 Or 273, 289, 291, 518 P3d 923 (2022). Under one exception, the state can "purge the taint" of unconstitutionally obtained evidence if it can show that the evidence would have been inevitably discovered by an officer utilizing "proper and predictable investigatory procedures." *State v. Johnson*, 340 Or 319, 326-27, 131 P3d 173 (2006); *see also State v. Johnson*, 335 Or 511, 520, 73 P3d 282 (2003) (explaining that "the government has the ultimate burden of persuasion to show that

its evidence is untainted" (internal quotations omitted)). For example, in one case, when an officer making an arrest for DUII obtained information from a pre-*Miranda* custodial interrogation that led to the discovery of an unlawfully possessed handgun on the floorboard of the driver's vehicle, the taint of the constitutional violation was purged where the state produced evidence that the officer would have inevitably discovered the handgun following the proper and predictable procedures following a DUII arrest, which included a routine check of the vehicle for valuables prior to towing. *State v. Larsen*, 89 Or App 260, 748 P2d 555 (1988). In short, the inevitable discovery doctrine requires the state to show that a subsequent discovery would have occurred independently of the constitutional violation. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985).

On appeal, defendant first argues that the trial court erred in denying the motion to suppress because the record created by the state lacks evidence sufficient to support a "nonspeculative finding on when the stop began" and therefore did not permit a "nonspeculative inference that the police officer [made the observations that created reasonable suspicion] *before* defendant was stopped." The state argues that the trial court implicitly found that the stopping officers had reasonable suspicion and that the state has no burden to prove the timing of the stop. Applying Oregon courts' reasonable suspicion analysis to the record in this case, we agree with defendant.

The state must establish that the stopping officers themselves had developed reasonable suspicion justifying the extension of the initial investigatory stop into a criminal investigation before the seizure occurred. *Arreola-Botello*, 365 Or at 711. Thus, the precise points in time at which officers develop reasonable suspicion and effect the stop are each important to the analysis. *See State v. Betancourt*, 374 Or 44, 51, 573 P3d 389 (2025) (explaining that an officer has reasonable suspicion if the officer "actually suspects" a crime and that the suspicion was reasonable under the totality of the circumstances existing "at the time of the stop"); *see also State v. Holcomb*, 202 Or App 73, 77, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 125 P3d 22 (2005)

(assessing facts known to the officer at the time he took the defendant's identification, effectuating a stop); *cf. Pomerenke v. MVD*, 134 Or App 630, 634-35, 896 P2d 1214, *rev den*, 322 Or 167 (1995) (Hearings officers may not, "after the fact, manufacture a reason that justifies a stop in the absence of any direct evidence about whether the officer believed that an infraction occurred before stopping the driver.").

The state, relying on *State v. Barnes*, 172 Or App 408, 18 P3d 1108 (2001), argues that the timing of the stop need not be established. In *Barnes*, we concluded that the state was not required to establish whether officers asked or directed a driver to exit his truck, or when the driver did so, because observing a person getting out of a vehicle was not a search. *Id.* at 413. In that case, an officer had been following a truck after observing it speeding and changing lanes without signaling. *Id.* at 410. The officer then turned their attention to a different driver who was driving in an unsafe manner consistent with DUII. *Id.* The officer pulled over the other driver, and, during the course of that stop, the driver of the truck reappeared and parked behind the squad car. *Id.* Officers on the scene, fearing for their safety, engaged in conversation with the driver of the truck while he remained in the vehicle. *Id.* During the course of that conversation, they noticed the odor of alcohol and asked the driver if he had been drinking, and the driver responded that he had. *Id.* Therefore, regardless of when the driver exited the vehicle and for what reason, the record contained sufficient evidence to establish prior reasonable suspicion of DUII. *Id.* at 411. That is not the case here.

Here, the record shows—and the parties agree—that a stop occurred prior to Neuenschwander's arrival and that the stopping officers suspected DUII. However, the state offered no evidence as to when that stop began and made no effort to establish that the stopping officers had reasonable suspicion justifying an extension of the traffic stop into a seizure. The only evidence admitted at the hearing on the motion to suppress pertained to the facts after Neuenschwander's arrival: Neuenschwander's testimony, dash camera footage from Neuenschwander's squad car, and a CAD report created by OSP dispatchers on the night of the collision.

		In denying the motion to suppress, the trial court reasoned that "any police officer who came upon the scene of the [collision], had contact with [d]efendant[,] and viewed the damage to each vehicle would have reasonable suspicion that [d]efendant had committed one or more traffic crimes." The state argues that this finding necessarily means that the court implicitly found that the seizure occurred after the officers developed reasonable suspicion, acknowledging that "an alternative finding—that the officer developed reasonable suspicion *after* seizing defendant—would have rendered the seizure unlawful." The state further argues that the implicit finding is supported by the record showing that the officers responded to the traffic collision and requested defendant's identification. In the state's view, "[t]he trial court could readily find that the officer developed reasonable suspicion of DUII before taking [the additional steps that constituted the seizure]."

		We agree with the state that the record supports the trial court's implicit finding that the officer and deputy sheriff responded to the traffic collision and that doing so, in itself, was not a seizure. *State v. Anfield*, 313 Or 554, 560, 836 P2d 1337 (1992) ("Police officers have authority to investigate traffic [crashes]."). We also agree that the evidence establishes that at some point the stopping officers asked for and obtained defendant's identification, which by itself does not constitute a seizure. *State v. Backstrand*, 354 Or 392, 410, 313 P3d 1084 (2013) ("A mere request for identification made by an officer in the course of an otherwise lawful police-citizen encounter does not, in and of itself, result in a seizure."). However, it is unclear from the record when and under what circumstances the officers obtained defendant's identification or for how long the officers retained possession of the identification card. How long an officer retains an individual's identification is one factor that can help determine when a seizure has occurred. *State v. Thompson*, 264 Or App 754, 761, 333 P3d 1125 (2014).

		We agree with the state's contention that the trial court made an implicit finding that the stopping officers developed reasonable suspicion of DUII prior to taking steps that constituted a seizure. However, the record does not

support the reasonable suspicion finding because it does not establish when the seizure occurred nor whether the particular officers who made the stop had in fact developed reasonable suspicion based on articulable observations *prior* to stopping defendant. *See Busacker*, 154 Or App at 534 ("[R]easonable suspicion must be based on a subjective belief by the stopping officer[.]"); *see also Smith*, 308 Or App at 91 (noting that the state is required to establish that the stopping officer had both subjective and objective reasonable suspicion before making an investigatory stop). We conclude that the trial court erred in determining that the stopping officers had reasonable suspicion based on the record because the record does not support an implicit finding that the stopping officers developed reasonable suspicion prior to effectuating a stop.

The state relies more heavily on its argument that the denial of defendant's motion to suppress should be upheld based on the inevitable discovery doctrine. Defendant responds by arguing that the state failed to show that Neuenschwander would have inevitably made the same observations and discovered the same evidence because the state failed to establish that—absent the prior stop—defendant was required to remain at the scene until the trooper arrived. Again, we agree with defendant that the evidence on the record does not establish that Neuenschwander would inevitably have discovered the evidence that defendant sought to have suppressed. To arrive at that determination, we first assess what duties arise for both law enforcement and drivers following a minor traffic collision.

Oregon statutes create limited authority for officers to investigate traffic violations. Relevant to the case before us, officers have authority to investigate possible traffic violations, ORS 810.410(3)(b); have authority to inquire into circumstances arising during the investigation that give rise to reasonable suspicion of a crime, ORS 810.410(3)(c); and, if an investigation is conducted, have a duty to submit an investigation report. ORS 810.460(1)(b) (requiring officers to submit a report following an investigation conducted under ORS 810.410). During the hearing on the motion to suppress, Neuenschwander acknowledged that, while it is

OSP's policy to respond to traffic crashes within their jurisdiction, troopers are not always able to respond to and investigate every traffic crash to which they are dispatched.

Drivers involved in a crash have certain statutorily imposed responsibilities. They must remain at the scene of the collision long enough to exchange with the other drivers involved contact information, registration and insurance information, and, if requested, information related to driving privileges. ORS 811.700(1)(b); *see also* ORS 811.700(1)(e) (providing that, if a driver discovers a collision resulting in damage only after leaving the scene, they must comply with their duties under the statute "as soon as reasonably possible"). If a traffic crash results in injury, death, or property damage in excess of $2,500, a driver must report the collision within 72 hours of the time of the crash. ORS 811.725(1)(a).

Two relevant principles related to traffic collisions emerge from the statutes: (1) officers may—but are not required to—respond to each traffic crash within their jurisdiction, and (2) drivers are not required to remain at the scene of a traffic collision for any longer than it takes to exchange the necessary information with other drivers involved in the crash. Indeed, this interpretation is supported by our understanding of the policy served by "hit and run" statutes, which is to penalize a driver "who attempt[s] to escape [their] financial responsibility for damage or attempts to escape criminal or civil prosecution by fleeing the scene of [a crash] without giving the required information to the other party." *State v. Garcia-Cisneros*, 285 Or App 252, 259, 397 P3d 49, *rev den*, 361 Or 886 (2017) (quoting *State v. Martin*, 298 Or 264, 268, 691 P2d 908 (1984)).

The record does not support an inevitable discovery determination because the state has not shown that defendant would have been required to remain at the scene of the crash absent the prior DUII stop. Neuenschwander did not arrive at the scene of the collision until sometime between ten and fifteen minutes after being dispatched. Neuenschwander testified that both parties' vehicles were operable, that the other driver involved in the collision in fact drove away during the stop, and that defendant's car was towed only because of the fact of his arrest. It is

reasonable to conclude that, but for the initial stop, defendant and the other driver could well have exchanged the required information and departed before the stopping officers or Neuenschwander arrived at the scene, thwarting Neuenschwander's discovery of the evidence that led to defendant's DUII conviction.

We conclude that the trial court erred in denying defendant's motion to suppress the evidence because there was insufficient evidence in the record to establish that reasonable suspicion arose prior to the local officers making a stop. And, under the totality of the circumstance of this case, the state has not met its burden to prove inevitable discovery.

Reversed and remanded.